405 P.2d 871

TOWN OF SCOTTSDALE, a municipal corporation, Appellant,

v.

STATE of Arizona ex rel. Robert W. PICK-RELL, Attorney General of the State of Arizona, Appellee.

No. 8153.

Supreme Court of Arizona.

En Banc.

Sept. 29, 1965.

Rehearing Denied Nov. 9, 1965.

Osmund Burton, Jr., City Atty., Scottsdale, and Snell & Wilmer, by Mark Wilmer, Phoenix, Special Counsel, for appellant.

Robert W. Pickrell, former Atty. Gen., and Charles M. Brewer, Phoenix, Sp. Asst. Atty. Gen., for appellee.

UDALL, Justice.

On November 21, 1962 the attorney general on behalf of the state of Arizona filed a quo warranto action against the appellant, town of Scottsdale, charging appellant with exercising an unlawful franchise over the area described in the town of Scottsdale's annexation ordinance 160 adopted November 10, 1962. A.R.S. § 12-2041 (1956).

Judgment was rendered in the trial court in favor of the state, from which the appellant perfected this appeal. The trial court found: (1) appellant did not obtain signatures of owners representing one half of the value of the real and personal property required by A.R.S. § 9-471 (1956); (2) the annexation petitions, at the time of their circulation, did not have an accurate map attached indicating the territory desired to be annexed; and, (3) the special meeting of the Scottsdale city council on November 10, 1962, which passed and adopted ordinance 160, was illegally convened and held, and therefore, without jurisdiction. Appellant assigns as error the above rulings of the trial court and the judgment entered accordingly.

The pertinent facts necessary to decide this appeal may be stated as follows: In November 1961 residents of an area contiguous to Scottsdale, Arizona met and decided they would initiate a movement to annex certain territory to the town of Scottsdale. The mayor and city council of Scottsdale were receptive to the committee's plan and were hopeful this area could be annexed. The committee was unsuccessful in getting residents to circulate the annexation petitions in certain areas within the boundaries of the map which was attached to the petitions. In January or February of 1962 the area was reduced according to statute. A.R.S. § 9–471, subsec. B (1956). Thereafter the second map, designating the reduced area, was made part of the annexation ordinance.

On May 1, 1962 a member of the annexation committee went to Arizona Public Service Company and Mountain States Telephone Company and obtained conditional petitions duly executed by those companies. The public utilities, to avoid conflict among their customers, signed the petitions conditionally, so their signatures would not be the deciding amount of valuation needed for annexation. Including the assessed value of the property owned by the public utilities, the committee exceeded the statutory amount necessary to confer jurisdiction upon the town to annex the area.

The first reading of annexation ordinance 160 was at a regular council meeting on September 18, 1962. On November 10, 1962 the ordinance was read the second and third times and adopted by the city council. The city council meeting on November 10, 1962 was a special meeting and the mayor was not present and could not be notified since he was absent from the municipality.

The statutory authority governing annexation proceedings in Arizona is A. R.S. § 9–471 (1956).[1] This statute does

---

1. A.R.S. § 9–471. Annexation by petition

A. A city or town may extend and increase its corporate limits in the following manner:

On presentation of a petition in writing signed by the owners of not less than one half in value of the real and personal property as would be subject to taxation by the city or town in the event of annexation, in any territory contiguous to the city or town, as shown by the last assessment of the property, and not embraced within the city or town limits, the governing body of the city or town may, by ordinance, annex the territory to such city or town upon filing and recording a copy of the ordinance, with an accurate map of the territory annexed, certified by the mayor of the city or town, in the office of the county recorder of the county where the annexed territory is located.

B. The petition submitted to the owners of property for their signature under the provisions of subsection A shall set forth a description of all the exterior boundaries of the entire area proposed to be annexed to the city or town. The petition shall have attached to it at all times an accurate map of the territory desired to be annexed, and no additions or alterations increasing the territory sought to be annexed shall be made after the peti-

not require absolute and literal compliance for annexation, but substantial compliance is necessary to effectuate the purpose of the statute. State ex rel. Helm v. Town of Benson, Cochise County, 95 Ariz. 107, 387 P.2d 807 (1963); McCune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537 (1957); City of Tucson v. Garrett, 77 Ariz. 73, 267 P.2d 717 (1954). What we must determine is whether there was substantial compliance with A.R.S. § 9–471 (1956), where the petitions signed and presented to the city council by two public utilities were conditional in form. If the conditional petitions may legally be included in the value of the personal and real property, the city council had jurisdiction to adopt and pass ordinance 160; however, if the conditional petition to which it is attached has been signed by any owner of property in such territory, but a reduction in the territory sought to be annexed may be made.

C. For the purpose of determining the sufficiency of the percentage of the value of property under this section, such values of property shall be determined as follows:

1. In the case of property assessed by the county assessor, values shall be the same as shown by the last assessment of the property.

2. In the case of property assessed by the state tax commission, values shall be appraised and assessed by the state tax commission in the manner provided by law for municipal assessment purposes.

D. The county assessor and the state tax commission, respectively, shall furnish to the city or town within thirty days after a request therefor, a statement in writing showing the appraisement and assessment of all such property.

titions were a nullity the city council lacked jurisdiction to pass the ordinance in question.[2]

A.R.S. § 9–471 (1956) requires as an indispensable condition precedent before a city or town may extend and increase its corporate limits, the "presentation of a petition in writing signed by the owners of not less than one half in value of the real and personal property." Gorman v. City of Phoenix, 70 Ariz. 59, 216 P.2d 400 (1950). The statute does not provide for a conditional petition being presented to the governing body of the city or town by public utilities, private corporations, or individual property owners. The power of the legislature over the methods and pro-

2. The petitions signed by the public utilities were worded as follows:

"This petition is signed subject to the understanding that over 50% of the assessed valuation has been subscribed excluding utilities in favor of this annexation and also that there is a controversy. 5/1/62 Arizona Public Service Company

–By– /s/ F. T. Fahlen, Jr.
F. T. Fahlen, Jr.,
Vice President"

"This petition is being signed with the understanding and condition upon the assurance that owners of more than 50% of the property in the above described area, exclusive of property owned by public utilities, have also signed petitions for the annexation of said area.

5/1/62 MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY
/s/ W. F. RHOADS
District Manager"

cedure of annexation is plenary. It is a basic principle that courts will not read into a statute something which is not within the manifest intention of the legislature as indicated by the statute itself. State ex rel. Morrison v. Anway, 87 Ariz. 206, 349 P.2d 774 (1960); Barlow v. Jones, 37 Ariz. 396, 294 P. 1106 (1930). To deviate from this principle is to judicially legislate, and not to perform the function of the court of interpreting. The statute requires a petition in writing signed by the owners of real and personal property, and not a petition in writing conditionally signed by the owners of real and personal property.

We have not been referred to, nor have we found a similar case in Arizona or other jurisdictions involving this precise question. By analogy, however, in Newton v. Borough of Emporium, 225 Pa. 17, 73 A. 984, 985 (1909), where the petition for paving a portion of a street was signed conditionally, the Supreme Court of Pennsylvania said:

"'We think there can be no question that a petition to confer jurisdiction on a borough council to pave streets must be signed unconditionally by the owners of the necessary two-thirds of the feet frontage thereon in order to fully and legally bind the petitioners. In the case of Von Steen v. Beatrice, 36 Neb. 421, 54 N.W. 677, the condition was that the grade should be satisfactory and that the trees should not be molested. The Supreme Court of Nebraska said: "We agree with the district court that the petition to confer upon the council jurisdiction must be unconditional, and that no argument is required to prove that the signatures should have been rejected."'"

Also, in Wheeler v. City of Muskogee, 51 Okl. 48, 151 P. 635, 639 (1915), where a conditional petition was filed in regard to paving assessments, the Oklahoma Supreme Court said:

"The sufficiency of this petition was put in issue in the trial of the instant case, and the trial court found every fact necessary to support the judgment, and necessarily found the petition insufficient. Whether it was because more than one-half of the property owners had not signed the petition as required by section 2, supra, or whether because the petition was conditional, we do not know; either finding would be sufficient to support the judgment. That the petition was not absolute, but conditional, is evident, as it contains this provision: * * *."

Neither case involved annexation and may be distinguished, but the question presented to the respective courts was similar to the question in the instant case, i. e. conditional petitions, and we find logical support in these decisions.

The public utilities did not desire to be in the pivotal position as to the amount needed for annexation, and therefore conditioned their signatures on the petitions. To permit this procedure would allow a public utility to change or add to the statute which is a legislative function. Permitting conditional petitions could lead to future litigation to determine if conditions were met, and destroy desired stability which should result from an annexation. The reason for the requirement of substantial compliance with the statute is that annexation could affect title to property, taxes, bond issues, sewer, road and paving assessments, power and sewer lines to name a few. Since these are some of the major factors that affect property owners, the annexation procedure should be as conclusive and definitive as the law will permit.

The appellant contends, since the conditions of the petitions were met, that the signatures were effective. This may be the rule in other areas of the law but it does not follow a statute may be interpreted to permit conditional petitions where the statute does not explicitly permit such a procedure. There is nothing in our decision that would prohibit a public utility from establishing internal business requirements and insisting they be met before they sign a petition. The defect in the procedure in question is the submission to the city council of a conditional petition. The public utilities could have determined that owners of over one half of the real and personal property in the area subject to taxation by the city, excluding utilities, desired annexation and could have signed the petitions without restrictions which would have given the city council jurisdiction to annex the area. By imposing conditions on the petitions, the utilities rendered the petitions a nullity, and excluding the amount represented by the conditional petitions, the city council did not have the required one half of the assessed value of the property in the area to confer jurisdiction to annex the area as required by statute.[3] The trial court was correct in finding the petitions were not signed by owners of real and personal property representing one half of the assessed value of the property within the area encompassed by the map attached to ordinance 160.

Appellant raises two other assignments of error which need not be decided in view of our holding, since the city council did

3. Total Assessed Valuation
of Property in Area ..... $ 2,025,858
Amount Necessary to
Confer Jurisdiction ...... $ 1,012,929
Amount Represented by
Petitions excluding utilities .................... $ 964,520
Property owned by Public
Utilities involved ......... $266,423.30

not have jurisdiction to annex the area pursuant to A.R.S. § 9-471 (1956).

The judgment of the lower court, holding that appellant did not obtain signatures of owners representing one half of the value of the real and personal property required by statute, is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and McFARLAND, JJ., concurring.