314 P.3d 569

The WEITZ COMPANY L.L.C., an Iowa limited liability company, Plaintiff/Appellee,

v.

Nicholas HETH, a single man; Barry Schwartz, a married man; Jeffrey Templin, a married man; Ken Perlmutter, a married man; Shelly Malkin, a married woman; Jody Storm Gale and Christie Bauer Gale, husband and wife; Jeff Templin and Terri Templin, husband and wife; Gregg Templin and Suzanne W. Templin, husband and wife; Michael J. Haasch and Laura S. Haasch, husband and wife; Jeffrey M. Lezak and Carol E. Lezak, husband and wife; Richard H. Fox, a married man; Brad Block, an unmarried man; Gregorio Meza Ayon, a married man; Siglifredo Lopez, a married man; Edward C. Ramos and Tamara C. Ramos, husband and wife; Scott Rose and Nicolle Rose, husband and wife; Scott Matthew Rose and Nicolle Claudine Rose Family Trust dated August 28, 2008; Darryl Goldstein, an unmarried man; Ken Adelson; Cary E. Frumes, an unmarried man; Ari Silvasti, a married man; Ben York III, an unmarried man; Chicago Summit, LLC; Franc W. Brodar and Jennifer A. Brodar, husband and wife; Ross Kerievsky, an unmarried man; Michael Schwartz, a married man; William Schwartz, a married man; Michael Castillo, a married man; H. Dennis Peterson and Carol A. Peterson, Trustees of the Peterson Living Trust dated March 6, 2006; Patrick Estfan and Sally Estfan, husband and wife; Tina Rospond, a single woman; L. Kenneth Brooks, an unmarried man; Patrick H. Walsh and Melissa R. Walsh, husband and wife; Afarin Radjaei–Bokharai, an unmarried person; Michael Davey, a married man; Jeffrey A. Hart, an unmarried man; Vincenzo Costa, an unmarried man; Joshua Pope, an unmarried man; Carl L. Faircloth and Patricia S. Faircloth, husband and wife; Art Gartenberg, an unmarried man; Mark F. Rudinsky and Christina J. Rudinsky, husband and wife; Pitre Properties Limited Partnership, an Arizona limited liability partnership; On–Call Solutions, LLC, an Arizona limited liability company; Michael L. McCartney, trustee of the Michael L. McCartney Revocable Living Trust dated December 27, 2005; David Hochberg and Elyse Hochberg, husband and wife; Jordan Green and Stephanie Green, husband and wife; Lawrence R. Kushner and Eileen S. Kushner, husband and wife; Debra J. Goodwin, a single woman; Lynda L. Gibson, an unmarried woman; Ting and Ling Development Group, LLC, an Arizona limited liability company; First National Bank Of Arizona, a national banking association; ING Bank, FSB, a federal savings bank; Mortgage Electronic Registration Systems, Inc., a Delaware corporation; Washington Mutual Bank, F.A., a federal savings bank; Wells Fargo Bank, N.A., a national association; Cole Taylor Bank, a foreign corporation; Bank of America, N.A., a national banking association; M & I Bank, FSB, a federal savings bank; National City Mortgage, a division of National City Bank, a national banking association; ABN Amro Mortgage Group, inc., a Delaware corporation; Harris Bank, N.A., a national banking association; CitiMortgage, Inc., a New York corporation; Perl Mortgage, Inc., an Illinois corporation; Charles Schwab Bank, N.A., a national banking association; Countrywide Bank, FSB, a federal savings bank; First Horizon Home Loans, a division of First Tennessee Bank, a national banking association; Premier Financial Services, Inc., an Arizona corporation, Defendants/Appellants.

No. 1 CA–CV 11–0788.

Court of Appeals of Arizona, Division 1.

Nov. 26, 2013.

Holden Willits PLC, Phoenix By Michael J. Holden and Barry A. Willits, Jonathan Sternberg, Attorney, P.C., Kansas City, MO, By Jonathan Sternberg, Pro Hac Vice, Co–Counsel for Plaintiff/Appellee.

Gust Rosenfeld P.L.C., Phoenix By Charles W. Wirken and Scott A. Malm, Counsel for Defendants/Appellants.

Dickinson Wright/Mariscal Weeks, PLLC, Phoenix By Michael R. Scheurich, Counsel for Amicus Curiae Land Title Association of Arizona.

Jennings, Haug & Cunningham, LLP, Phoenix By James L. Csontos, Counsel for Amicus Curiae Arizona Builders' Alliance.

## OPINION

BROWN, Judge.

¶ 1 The question we address is whether Arizona's statutory provision governing the priority of mechanics' liens (Arizona Revised Statutes ("A.R.S.") section 33–992(A)) permits a court to shift lien priorities by applying the doctrine of equitable subrogation. Because § 33–992(A) expressly provides that mechanics' liens have priority over *all* subsequent encumbrances (subject to a narrow exception not applicable here), we hold that allowing a subsequent lienholder to equitably subrogate its loan to a position ahead of a mechanic's lien would contravene the plain statutory requirement. We therefore affirm the superior court's grant of summary judgment.

## BACKGROUND

¶ 2 First National Bank of Arizona provided a $44,000,000 construction loan to Summit at Copper Square, LLC ("Summit") to build a 165–unit mixed-use commercial and resi-dential condominium project in downtown Phoenix. The bank recorded a deed of trust on the project to secure Summit's payment obligations under the construction loan, which was later increased by approximately $10,000,000.

¶ 3 Summit contracted with The Weitz Company ("Weitz") to serve as the general contractor on the project. Construction commenced, and on January 18, 2006, Weitz served a preliminary twenty-day mechanic's lien notice. *See* A.R.S. § 33–992.01. The project continued according to the parties' agreement, with Summit paying Weitz on a monthly basis in response to Weitz's payment applications. As the project neared completion, however, Summit was unable to pay about $4,000,000 of Weitz's billed work.

¶ 4 Summit started selling individual condominium units in September 2007, before construction was completed. Ultimately, as relevant here, 92 units were sold. Most of the purchases were financed by various commercial lenders, but some units were sold for cash. Proceeds from the sales were applied to pay off allocated portions of the construction loan, but the outstanding balance of Weitz's construction contract remained unpaid.

¶ 5 Weitz recorded a mechanic's lien against the project in May 2008. In November, Weitz filed a complaint seeking to foreclose its lien against, *inter alia*, the purchasers of the units and the lenders who provided the funds used to finance the purchases (collectively "Lenders"). Lenders moved for partial summary judgment, arguing they were equitably subrogated to First National Bank's position, and thus had priority over Weitz's lien. In response, Weitz also sought partial summary judgment, asserting that its lien had priority under A.R.S. § 33–992(A) over all other liens or encumbrances attaching after commencement of the project.

¶ 6 Following oral argument on the motions, the superior court ruled in favor of Weitz, finding it would be improper to apply equitable subrogation because the construction loan had not been fully discharged. The court therefore concluded Weitz's lien was superior to Lenders' liens under A.R.S.

§ 33–992(A), which specifies the priority afforded to "mechanics' and materialmen's liens" ("mechanics' liens"). The parties agreed to a stipulated judgment lien amount of $2,123,000, subject to Lenders' right to appeal the court's summary judgment ruling. We have jurisdiction over this appeal pursuant to A.R.S. § 12–2101(A)(1).

## DISCUSSION

¶ 7 We review the grant of summary judgment de novo, *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308, ¶ 2, 70 P.3d 435, 437 (2003), and we may affirm a summary judgment if it is correct for any reason, *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App.2001). Because we conclude that priority of the liens at issue is conclusively established by statute, we need not address the superior court's implied determination that Arizona law does not permit partial equitable subrogation.

## I. Historical Preference of Mechanics' Liens

¶ 8 A lien is defined as a "legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied." Black's Law Dictionary 941 (8th ed.2004). Every person who provides labor or materials for the construction of any building "shall have a lien" on such building for the work done or materials supplied. A.R.S. § 33–981. Enforcement of the lien is contingent upon compliance with detailed statutory procedures, *see* A.R.S. §§ 33–981 to –1008, and the lien's priority is governed by § 33–992(A), which provides in part:

> The liens provided for in this article ... are preferred to *all liens, mortgages or other encumbrances upon the property attaching subsequent to the time the labor was commenced or the materials were commenced to be furnished* except any mortgage or deed of trust that is given as security for a loan made by a construction lender ... if the mortgage or deed of trust is recorded within ten days after labor was commenced or the materials were commenced to be furnished.

(Emphasis added.) Legislative recognition that mechanics' liens have priority over subsequent liens has been in existence since 1865, almost half a century before statehood:

> [T]he liens created by this act shall be preferred to every other lien or incumbrance, which shall have been attached upon said property subsequent to the time at which the work was commenced or the materials furnished; but nothing herein contained shall be construed as impairing any valid incumbrance upon the said lands, duly made and recorded before such work was commenced or materials furnished.

Acts of Arizona, 1865, p. 38 sec. 4; *see also* Compiled Laws of the Territory of Arizona as Chapter XXVII, sec. 4 (1874); Revised Statutes of Arizona Territory, Title 40, Ch. 2, p. 759–64 (1901); Revised Statutes of Arizona Civil Code, Title 29, Ch. 2, p. 1256, ¶ 3658 (1913).

¶ 9 As recognized by our supreme court, the purpose of the mechanics' lien statutes is to protect the rights of those who furnish labor and materials to improve another person's property. *Collins v. Stockwell*, 137 Ariz. 416, 418, 671 P.2d 394, 396 (1983). Because these statutes are remedial, we construe them liberally to achieve their primary purpose. *See Kerr–McGee Oil Indus., Inc. v. McCray*, 89 Ariz. 307, 311, 361 P.2d 734, 736 (1961); *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932) (recognizing that the legislature "intended that laborers and materialmen, who contribute of their labor and means to enhance the value of the property of another, should be jealously protected").

## II. Plain Statutory Language

¶ 10 In construing A.R.S. § 33–992(A), our fundamental goal is to give effect to legislative intent. *Hall v. Read Dev., Inc.*, 229 Ariz. 277, 279, ¶ 6, 274 P.3d 1211, 1213 (App.2012). We look first to the language used by the legislature and will give effect to the plain meaning of the statute's terms as the best indicator of intent unless those terms are ambiguous or would create an absurd result. *Id.* As a rule of statutory construction, we "will not read into a statute something which is not within the manifest

intent of the legislature as indicated by the statute itself." *Town of Scottsdale v. State ex rel. Pickrell,* 98 Ariz. 382, 386, 405 P.2d 871, 873 (1965).

¶ 11 The language of § 33–992(A) is unambiguous. It expressly provides that mechanics' liens have priority over "all liens, mortgages, or other encumbrances" (except for construction loans) attaching subsequent to the time the labor was commenced or materials provided. In this case, it is undisputed that Weitz perfected its mechanic's lien and that the deeds of trust relating to the purchased units attached to the subject property after Weitz commenced work on the project. Therefore, under the plain language of § 33–992(A), Weitz's mechanic's lien has priority over Lenders' deeds of trust. *See Calik v. Kongable,* 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999) ("With only a few exceptions, if the language is clear and unambiguous, we apply it without using other means of statutory construction."); *Kilpatrick v. Maricopa Cnty.,* 105 Ariz. 413, 422, 466 P.2d 18, 27 (1970) (explaining that "if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for [people] to mean what is said or say what they mean and purposeful communication is unattainable").

¶ 12 Lenders argue nonetheless that the doctrine of equitable subrogation is a valid exception to this statutory order of priority, permitting the superior court to elevate the priority of Lenders' loans to that of the construction loan. Equitable subrogation allows "[o]ne who fully performs an obligation of another, secured by a mortgage, [to] become[ ] by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." *Sourcecorp, Inc. v. Norcutt,* 229 Ariz. 270, 272, ¶ 5, 274 P.3d 1204, 1206 (2012) (quoting Restatement (Third) of Property: Mortgages § 7.6(a) ("Restatement")). Stated more succinctly, equitable subrogation "enables a later-filed lienholder to leap-frog over an intervening lienholder." *In re Fontainebleau Las Vegas Holdings,* 289 P.3d 1199, 1212 (Nev. 2012) (quotation omitted). "This equitable

remedy is 'designed to avoid a person's receiving an unearned windfall at the expense of another.'" *Sourcecorp,* 229 Ariz. at 272, ¶ 5, 274 P.3d at 1206 (quoting Restatement § 7.6).

¶ 13 Asserting that Arizona courts have consistently recognized and applied equitable subrogation in the context of mechanics' liens, Lenders rely on three prior decisions from this court. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC,* 227 Ariz. 382, 258 P.3d 200 (App.2011); *Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.,* 208 Ariz. 478, 95 P.3d 542 (App.2004); *Peterman–Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz.,* 2 Ariz.App. 321, 408 P.2d 841 (1965). *Continental Lighting* is readily distinguishable, as it involved application of the replacement doctrine, not equitable subrogation. 227 Ariz. at 387, ¶ 17, 258 P.3d at 205 (explaining that the replacement doctrine may apply when a senior lender and borrower agree to certain changes in the terms of the secured debt, and the lender will retain its priority to the extent the changes do not materially prejudice junior lienholders). Lenders have made no assertion they are entitled to priority based on the replacement doctrine; therefore, we do not address whether a court may rely on that doctrine to alter the lien priorities established by § 33–992(A).

¶ 14 In *Peterman–Donnelly,* the Apache Junction Chamber of Commerce borrowed $10,000 from Eyre, secured by a mortgage on property where the Chamber intended to construct a baseball facility. 2 Ariz.App. at 322, 408 P.2d at 842. The Chamber conveyed the property to a baseball association and eventually a contractor started construction of the project. *Id.* The association then borrowed $35,000 from a bank and paid off the original loan from Eyre. *Id.* The contractor filed a mechanic's lien and successfully foreclosed, but execution was stayed pending the trial court's determination of the lien priorities between the contractor and the bank. *Id.* On appeal, this court determined that notwithstanding the perfected mechanic's lien, the bank was entitled to step into Eyre's shoes, or in other words, equitably

subrogate into Eyre's original loan position. *Id.* at 325, 408 P.2d at 845. The court quoted the relevant portion of § 33–992, and stated that because the bank's lien attached to the property after the mechanic's lien, "the statute is applicable, *unless some other factor affords the appellee a priority, in whole or in part.*" *Id.* (emphasis added). With no additional statutory analysis, the court then determined, "consistent with equity and law," that the bank's lien should be equitably subrogated to the Eyre mortgage. *Id.* In our view, the *Peterman–Donnelly* court failed to adhere to the plain language of § 33–992, which, if applied as written, gives priority to a mechanic's lien over "all liens, mortgages, or other encumbrances upon the property attaching subsequent to the time the labor was commenced or the materials were furnished."

¶ 15 *Lamb* also involved the foreclosure of a mechanic's lien and a determination of priority. 208 Ariz. at 479, ¶ 2, 95 P.3d at 543. The trial court granted summary judgment to the contractor, rejecting the bank's equitable subrogation argument. *Id.* at ¶ 3. On appeal, after providing a thorough analysis of the equitable subrogation doctrine, this court reversed, ultimately concluding the trial court erred in denying equitable subrogation for the bank. *See id.* at 480–84, ¶¶ 6–20, 95 P.3d at 544–48. Addressing § 33–992, the court acknowledged that in general, mechanics' liens have priority over later-recorded encumbrances. *Id.* at 480, ¶ 6, 95 P.3d at 544. Relying on *Peterman–Donnelly* and two other cases that do not involve mechanics' liens, the court then added, "[b]ut application of the doctrine of equitable subrogation allows a subsequent lender who supplies funds used to pay off a primary and superior encumbrance to be substituted into the priority position of the primary lienholder, despite the recording of an intervening lien." *Id.* Similar to our assessment of *Peterman–Donnelly,* we conclude that the *Lamb* court failed to recognize that § 33–992 does not provide an exception for altering the lien priority our legislature has afforded to mechanics' liens.

¶ 16 In fairness to our colleagues who decided the *Peterman–Donnelly* and *Lamb* cases, nothing in either decision suggests that the parties in those cases argued or briefed the specific issue we address here—the resolution of a conflict between specific statutory language and an equitable doctrine. In any event, we disagree with those decisions insofar as they may be interpreted to stand for the proposition that a court may apply equitable subrogation to override the plain language of § 33–992(A). *See Morgan v. Carillon Inv., Inc.,* 207 Ariz. 547, 550 n. 1, 88 P.3d 1159, 1162 n. 1 (App.2004) (disagreeing with prior panel's interpretation of a statute and recognizing that "stare decisis and the need for stability in the law do not preclude us from determining that a prior court of appeals decision was incorrectly decided").

### III. Legislative Acquiescence

¶ 17 Arizona courts recognize that "[i]f the legislature amends a statute after it has been judicially construed, but does not modify the statute in a manner that changes the court's interpretation, we presume the legislature approved of the court's construction and intended that it remain a part of the statute." *Galloway v. Vanderpool,* 205 Ariz. 252, 256, ¶ 17, 69 P.3d 23, 27 (2003). Relying on that principle, Lenders assert that the legislature has acquiesced to the courts' application of equitable subrogation in circumstances involving mechanics' liens because in amending A.R.S. § 33–992 since *Peterman–Donnelly,* the legislature did not explicitly prohibit application of equitable subrogation in the context of mechanics' liens. We disagree with Lenders' assertion for two reasons.

¶ 18 First, the principle of legislative acquiescence applies only when a statute has been "construed by the court of last resort." *See, e.g., Sw. Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality,* 194 Ariz. 22, 25, ¶ 20, 976 P.2d 872, 875 (1999). Our court of last resort is our supreme court, and it has not construed § 33–992 in the context of equitable subrogation. *See Calvert v. Farmers Ins. Co. of Ariz.,* 144 Ariz. 291, 297, 697 P.2d 684, 690 (1985) ("*Owens* and progeny, however, were decided by the Court of Appeals, and not the court of last resort in this state, the Arizona Supreme Court.").

¶ 19 Second, legislative acquiescence is "limited to instances in which the legislature has considered and declined to reject the relevant judicial interpretation." *Sw. Paint,* 194 Ariz. at 25, ¶ 21, 976 P.2d at 875 ("We have squarely rejected the idea that silence is an expression of legislative intent."); *Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 106, 859 P.2d 724, 729 (1993) ("It makes sense to infer that the legislature approves judicial interpretation of a statute when we have some reason to believe that the legislature has considered and declined to reject that interpretation."). Lenders have not directed us to, nor are we aware of, any information suggesting that the legislature considered and declined to reject *Peterman–Donnelly*'s conclusion that "other factor[s]" may support deviation from the lien priority of § 33–992. *See Peterman–Donnelly,* 2 Ariz.App. at 325, 408 P.2d at 845.

## IV. Equity Follows the Law

¶ 20 It is also well-established that equity cannot override unambiguous statutory language. *See, e.g., Valley Drive-in Theatre Corp. v. Superior Court,* 79 Ariz. 396, 399, 291 P.2d 213, 214 (1955) ("When rights are clearly established and defined by a statute, equity has no power to change or upset such rights."); *McDermott v. McDermott,* 129 Ariz. 76, 77, 628 P.2d 959, 960 (App.1981) ("Whenever the rights of parties are clearly defined and established by statutory provisions, equity follows the law."). Additionally, courts in Arizona generally decline to follow the Restatement when a different rule has been adopted by legislative enactment. *See Irwin v. Murphey,* 81 Ariz. 148, 152, 302 P.2d 534, 537 (1956). It is evident that the Arizona Legislature has established a clear and unambiguous rule for determining priority of mechanics' liens that is different from the Restatement approach of permitting courts to alter the lien priority based on equitable subrogation.

¶ 21 Lenders have not cited and our research has not revealed any other authority holding that a statute that governs the priority of mechanics' liens may be superseded by the doctrine of equitable subrogation. Instead, the few cases that have addressed the issue are consistent with our analysis. *See, e.g., Ex parte Lawson,* 6 So.3d 7, 14 (Ala. 2008) ("The materialman's lien statutes 'are an expression of legislative intent that should stay the hand of equity in this situation. If we held otherwise, we would violate the equitable maxim that equity follows the law.' "); *Gibson v. Neu,* 867 N.E.2d 188, 201–02 (Ind. App.2007) (finding that equitable subrogation involving liens is permissible in all situations except for mechanics' liens); *Fontainebleau,* 289 P.3d at 1207 ("Because principles of equity cannot trump an express statutory provision, we conclude that equitable subrogation does not apply against mechanic's lien claimants."); *Richards v. Sec. Pac. Nat'l Bank,* 849 P.2d 606, 611 (Utah App.1993), *superseded by statute on other grounds as recognized in Olsen v. Chase,* 270 P.3d 538 (App.2011), (concluding that "[t]he mechanics' lien statutes are an expression of legislative intent that should stay the hand of equity in this situation"); *cf. Countrywide Home Loans, Inc. v. First Nat. Bank of Steamboat Springs, N.A.,* 144 P.3d 1224, 1230 (Wyo. 2006) ("Unlike the trend in other courts, we are not persuaded any manifest injustice results from applying the express language of § 34–1–121 and adhering to the clear legislative intent that lien priority in Wyoming is to be determined by the date of recording.").

¶ 22 The Nevada Supreme Court's analysis in the *Fontainebleau* case is instructive. In that case, a developer sought to construct a multi-billion dollar casino project in Las Vegas. 144 P.3d at 1207. Bank of America loaned the developer $150 million secured by a first position deed of trust. *Id.* at 1207–08. Over 300 contractors began performing work, many of whom recorded mechanics' liens against the property. *Id.* at 1208. The developer then obtained a $1.85 billion construction loan from Bank of America, to be disbursed in three phases. *Id.* As partial security for the loan, the developer agreed to execute a deed of trust in favor of Bank of America to be recorded in first priority position. *Id.* Work on the project ceased and the developer filed for bankruptcy. *Id.* The property was eventually sold, with the liens attached to the proceeds. *Id.* Wilmington, which succeeded Bank of America as administrative agent for the lenders, filed an adver-

sary proceeding against the contractors to determine the priority of their mechanics' liens. *Id.* The bankruptcy court certified several questions to the Nevada Supreme Court, including whether Nevada's mechanics' lien priority statute would prohibit the application of equitable subrogation against mechanics' lien claimants. *Id.*

¶ 23 Although the Nevada court had applied the doctrine of equitable subrogation in other contexts, it had never considered how equitable subrogation interacts with Nevada's statute governing the priority of mechanics' liens. *Id.* at 1209. Nevada's mechanics' lien priority statute originated in 1861, when it was passed by the Legislative Assembly of the Territory of Nevada. 1861 Laws of the Territory of Nevada, ch. 16, at 35. The current statute, Nevada Revised Statutes ("NRS") 108.225, reads as follows:

1. [Mechanics'] liens ... are preferred to: Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.

Any lien, mortgage or other encumbrance of which the lien claimant had no notice and which was unrecorded against the property at the commencement of construction of a work of improvement.

2. Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by [mechanics'] liens ... after the commencement of construction of a work of improvement are subordinate and subject to the [mechanics'] liens ... regardless of the date of recording the notices of liens.

Based on this language, the court determined that "[t]he Legislature has spoken and has created a specific statutory scheme whereby a mechanic's lien is afforded priority over a subsequent lien, mortgage, or encumbrance in order to safeguard payment for work and materials provided for construction or improvements on land." *Fontainebleau,* 289 P.3d at 1212 (citing *Lehrer McGovern Bovis v. Bullock Insulation,* 124 Nev. 1102, 197 P.3d 1032, 1041 (2008)). The court therefore rejected Wilmington's argument that, "[d]espite the plain and unambiguous language of the statute, [the court should] apply equitable subrogation ... in the mechanic's lien

context." *Id.* Based on NRS 108.225, the court found that it could not apply equitable subrogation, as the statute "unequivocally places mechanic's lien claimants in an unassailable priority position." *Id.* The court explained further that "equitable principles will not justify a court's disregard of statutory requirements." *Id.*

¶ 24 Consistent with the reasoning in *Fontainebleau,* we conclude that equitable subrogation cannot operate to supersede the statutory requirement that mechanics' liens have priority over all subsequent encumbrances, except for construction loans filed within the narrow time constraints of the statute. *See State ex rel. Morrison v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions."); *Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 432, 561 P.2d 750, 756 (App.1977) ("The courts cannot read into either the statutes or the claim of lien what is not there, or take from either what is there.").

## CONCLUSION

¶ 25 For the foregoing reasons, we affirm the superior court's decision confirming that Weitz's lien has priority over Lenders' liens.

Presiding Judge MICHAEL J. BROWN delivered the Opinion of the Court, in which Judge ANDREW W. GOULD and Judge DONN KESSLER joined.