IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

THE WEITZ COMPANY L.L.C., AN IOWA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellee,*

*v.*

NICHOLAS HETH, A SINGLE MAN; BARRY SCHWARTZ, A MARRIED MAN; JEFFREY TEMPLIN, A MARRIED MAN; KEN PERLMUTTER, A MARRIED MAN; SHELLY MALKIN, A MARRIED WOMAN; JODY STORM GALE AND CHRISTIE BAUER GALE, HUSBAND AND WIFE; JEFF TEMPLIN AND TERRI TEMPLIN, HUSBAND AND WIFE; GREGG TEMPLIN AND SUZANNE W. TEMPLIN, HUSBAND AND WIFE; MICHAEL J. HAASCH AND LAURA S. HAASCH, HUSBAND AND WIFE; JEFFREY M. LEZAK AND CAROL E. LEZAK, HUSBAND AND WIFE; RICHARD H. FOX, A MARRIED MAN; BRAD BLOCK, AN UNMARRIED MAN; GREGORIO MEZA AYON, A MARRIED MAN; SIGLIFREDO LOPEZ, A MARRIED MAN; EDWARD C. RAMOS AND TAMARA C. RAMOS, HUSBAND AND WIFE; SCOTT ROSE AND NICOLLE ROSE, HUSBAND AND WIFE; SCOTT MATTHEW ROSE AND NICOLLE CLAUDINE ROSE FAMILY TRUST DATED AUGUST 28, 2008; DARRYL GOLDSTEIN, AN UNMARRIED MAN; KEN ADELSON; CARY E. FRUMES, AN UNMARRIED MAN; ARI SILVASTI, A MARRIED MAN; BEN YORK III, AN UNMARRIED MAN; CHICAGO SUMMIT, LLC; FRANC W. BRODAR AND JENNIFER A. BRODAR, HUSBAND AND WIFE; ROSS KERIEVSKY, AN UNMARRIED MAN; MICHAEL SCHWARTZ, A MARRIED MAN; WILLIAM SCHWARTZ, A MARRIED MAN; MICHAEL CASTILLO, A MARRIED MAN; H. DENNIS PETERSON AND CAROL A. PETERSON, TRUSTEES OF THE PETERSON LIVING TRUST DATED MARCH 6, 2006; PATRICK ESTFAN AND SALLY ESTFAN, HUSBAND AND WIFE; TINA ROSPOND, A SINGLE WOMAN; L. KENNETH BROOKS, AN UNMARRIED MAN; PATRICK H. WALSH AND MELISSA R. WALSH, HUSBAND AND WIFE; AFARIN RADJAEI-BOKHARAI, AN UNMARRIED PERSON; MICHAEL DAVEY, A MARRIED MAN; JEFFREY A. HART, AN UNMARRIED MAN; VINCENZO COSTA, AN UNMARRIED MAN; JOSHUA POPE, AN UNMARRIED MAN; CARL L. FAIRCLOTH AND PATRICIA S. FAIRCLOTH, HUSBAND AND WIFE; ART GARTENBERG, AN UNMARRIED MAN; MARK F. RUDINSKY AND CHRISTINA J. RUDINSKY, HUSBAND AND WIFE; PITRE PROPERTIES LIMITED PARTNERSHIP, AN ARIZONA LIMITED LIABILITY PARTNERSHIP; ON-CALL SOLUTIONS, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; MICHAEL L. MCCARTNEY, TRUSTEE OF THE MICHAEL L. MCCARTNEY REVOCABLE LIVING TRUST DATED DECEMBER 27, 2005; DAVID HOCHBERG AND ELYSE HOCHBERG, HUSBAND AND WIFE; JORDAN GREEN AND STEPHANIE GREEN, HUSBAND AND WIFE; LAWRENCE R. KUSHNER AND EILEEN S. KUSHNER, HUSBAND AND WIFE; DEBRA J. GOODWIN, A SINGLE

WOMAN; LYNDA L. GIBSON, AN UNMARRIED WOMAN; TING AND LING DEVELOPMENT GROUP, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; FIRST NATIONAL BANK OF ARIZONA, A NATIONAL BANKING ASSOCIATION; ING BANK, FSB, A FEDERAL SAVINGS BANK; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A DELAWARE CORPORATION; WASHINGTON MUTUAL BANK, F.A., A FEDERAL SAVINGS BANK; WELLS FARGO BANK, N.A., A NATIONAL ASSOCIATION; COLE TAYLOR BANK, A FOREIGN CORPORATION; BANK OF AMERICA, N.A., A NATIONAL BANKING ASSOCIATION; M&I BANK, FSB, A FEDERAL SAVINGS BANK; NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK, A NATIONAL BANKING ASSOCIATION; ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION; HARRIS BANK, N.A., A NATIONAL BANKING ASSOCIATION; CITIMORTGAGE, INC., A NEW YORK CORPORATION; PERL MORTGAGE, INC., AN ILLINOIS CORPORATION; CHARLES SCHWAB BANK, N.A., A NATIONAL BANKING ASSOCIATION; COUNTRYWIDE BANK, FSB, A FEDERAL SAVINGS BANK; FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK, A NATIONAL BANKING ASSOCIATION; PREMIER FINANCIAL SERVICES, INC., AN ARIZONA CORPORATION,
*Defendants/Appellants.*

————————

No. CV-13-0378-PR
Filed August 26, 2014

————————

Appeal from the Superior Court in Maricopa County
The Honorable John A. Buttrick
No. CV2008-028378
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
233 Ariz. 442, 314 P.3d 569 (App. 2013)
**VACATED**

————————

COUNSEL:

Michael J. Holden (argued), Barry A. Willits, Holden Willits PLC, Phoenix; and Jonathan Sternberg, Jonathan Sternberg, Attorney, P.C., Kansas City, MO, for The Weitz Company, L.L.C.

Charles W. Wirken (argued), Scott A. Malm, Gust Rosenfeld P.L.C., Phoenix, for Nicholas Heth, et al.

Michael R. Scheurich, Dickinson Wright/Mariscal Weeks, Phoenix, for Amicus Curiae Land Title Association of Arizona

John J. Egbert, Jennings, Strouss & Salmon, P.L.C., Phoenix, for Amici Curiae BMO Harris Bank and Arizona Bankers Association

James L. Csontos, Jennings, Haug & Cunningham, LLP, Phoenix, for Amici Curiae Arizona Builders' Alliance

Gaye L. Gould, Sharon B. Shively, Matthew B. Meaker, James W. Armstrong, Sacks Tierney P.A., for Amici Curiae American Subcontractors Association and American Subcontractors Association of Arizona

_____

JUSTICE TIMMER authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER, JUSTICE BERCH, JUSTICE BRUTINEL, and JUDGE KELLY* joined.

_____

JUSTICE TIMMER, opinion of the Court:

**¶1** Arizona Revised Statutes § 33-992(A) gives mechanics' liens priority over liens recorded after construction begins on real property. We are asked to decide whether that statute precludes assignment by equitable subrogation of a lien that attached before construction began on the project at issue. We hold that it does not. Additionally, although a third party generally must discharge the entire lien obligation to qualify for equitable subrogation, when a single mortgage burdens multiple parcels, a third party may be entitled to equitable subrogation when that party has paid a pro rata amount of the obligation and obtained a full release of the parcel at issue from the mortgage.

## I. BACKGROUND

_____

* Chief Justice Scott Bales has recused himself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Virginia C. Kelly, Judge of the Court of Appeals, Division Two, was designated to sit in this matter.

¶2            We view the evidence and its reasonable inferences in the light most favorable to Appellants as the parties against whom partial summary judgment was granted. *See Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12, 69 P.3d 7, 11 (2003).

¶3            First National Bank of Arizona loaned approximately $62 million over time to The Summit at Copper Square, LLC to construct a high-rise commercial and condominium project in Phoenix. First National secured its initial loan of $44 million with a deed of trust against the property in April 2005; eight months later it increased that loan by approximately $8 million, recording a modification to its deed of trust. First National recorded a second deed of trust in February 2007 to secure approximately $10 million in additional loaned funds. First National agreed with Summit to release condominium units from both deeds of trust upon payment of release prices set forth in the parties' loan agreements as third parties purchased completed units. Our record does not contain the loan agreements, and nothing reflects how the release prices would be calculated.

¶4            The Weitz Company, L.L.C. was the general contractor for the project and began construction in November 2005. For nearly two years, Summit timely paid Weitz, which in turn paid its subcontractors and suppliers. As the project neared completion, however, Summit failed to pay Weitz approximately $4 million.

¶5            Beginning in September 2007, before the project was finished, Summit sold ninety-one completed condominium units to buyers who either financed their purchases or paid cash. Some of the purchase money for these units was applied to the construction loan, resulting in First National releasing these units from both its deeds of trust. Deeds of trust securing the owners' purchase money loans were then recorded against the condominium units. The lenders required their deeds of trust to be in first-lien position as a condition for funding. Once the units were sold, they were treated as separate parcels of real estate. A.R.S. § 33-1204(A).

¶6            In May 2008, after Summit had sold eighty-five of the ninety-one units at issue, Weitz recorded a mechanics' lien against the project. Six months later, Weitz sued to foreclose its lien against Summit, the unit owners, and their lenders.

¶7        The owners and lenders ("Owners and Lenders") contested the foreclosure and moved for partial summary judgment. They asserted that because they had paid the portions of the construction loan allocated to their units, they were equitably subrogated to First National's April 2005 deed of trust and therefore had priority over Weitz's mechanics' lien.[1] Weitz filed a cross-motion for partial summary judgment, arguing that A.R.S. § 33-992(A) precludes equitable subrogation or, alternatively, that the Owners and Lenders were not eligible to invoke the doctrine because they did not fully discharge Summit's obligation to First National.

¶8        The trial court agreed with Weitz's alternative argument. The court then ruled that, because Weitz indisputably commenced work on the project before any units were sold, A.R.S. § 33-992(A) gave Weitz's mechanics' lien priority. The parties subsequently allocated percentages of Weitz's lien among the sold units, and the court entered judgment foreclosing Weitz's lien against those units. Additionally, because Summit failed to pay its remaining obligation, First National's successor-in-interest foreclosed on the unsold remainder of the project.

¶9        The court of appeals agreed that Weitz's lien had priority, but for a different reason. It held that § 33-992(A) precludes application of equitable subrogation to give the Owners and Lenders lien priority over Weitz's lien. *Weitz Co. v. Heth*, 233 Ariz. 442, 446–47 ¶¶ 12–16, 314 P.3d 569, 573–74 (App. 2013).

¶10        We granted review because the interplay between § 33-992(A) and application of the equitable subrogation doctrine presents a legal issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II. DISCUSSION

---

[1]        Weitz conceded in the trial court that First National's April 2005 deed of trust was superior to Weitz's mechanics' lien. But neither Weitz nor the Owners and Lenders addressed whether the December 2005 modification to the deed of trust had priority over Weitz's lien, and we do not address that issue.

**A.**

**¶11**　　　　We review the trial court's grant of partial summary judgment de novo. *See Andrews*, 205 Ariz. at 240 ¶ 12, 69 P.3d at 11 (2003).

**B.**

**¶12**　　　　Arizona applies "equitable subrogation" as set forth in Restatement (Third) of Property: Mortgages § 7.6(a) (1997) ("Restatement"):

> One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

*See Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, 273 ¶ 12, 274 P.3d 1204, 1207 (2012) (adopting the Restatement approach). Under this doctrine, for example, a junior lienholder who fully satisfies a debt secured by a superior mortgage on real property may be equitably subrogated to that mortgage to the extent necessary to prevent an intervening lienholder from receiving an unearned windfall afforded by an advancement in lien priority.[2] *See id.* at 275–76 ¶¶ 26–27, 274 P.3d at 1209–10; Restatement § 7.6 cmt. a. If equitable subrogation is permitted, the junior lienholder, now the subrogee, is entitled to obtain and record a written assignment of the superior lienholder's rights to place others on notice of the subrogation. Restatement § 7.6 cmt. a.

**¶13**　　　　This case presents our first opportunity to address the interplay between equitable subrogation and the priority granted to mechanics' liens by § 33-992(A), which provides, in relevant part, as follows:

---

[2]　　　　Throughout this opinion, we use the terms "mortgage," "deed of trust," and "lien" interchangeably.

> The liens provided for in this article . . . are preferred to all liens, mortgages or other encumbrances upon the property attaching subsequent to the time the labor was commenced or the materials were commenced to be furnished except any mortgage or deed of trust that is given as security for a loan made by a construction lender . . . if the mortgage or deed of trust is recorded within ten days after labor was commenced or the materials were commenced to be furnished.

Until this case, our court of appeals has consistently acknowledged the viability of equitable subrogation in the mechanics' lien context. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 385 ¶ 9, 258 P.3d 200, 203 (App. 2011); *Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, 480 ¶ 6, 95 P.3d 542, 544 (App. 2004); *Nw. Fed. Sav. & Loan v. Tiffany Constr. Co.*, 158 Ariz. 100, 104–05, 761 P.2d 174, 178–79 (App. 1988); *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz.*, 2 Ariz. App. 321, 325–26, 408 P.2d 841, 845–46 (1965).

**¶14** The court of appeals in this case did not address *Northwest Federal Savings & Loan*, and either distinguished its other decisions or rejected them as contrary to § 33-992(A). *Weitz*, 233 Ariz. at 446–47 ¶¶ 13–16, 314 P.3d at 573–74. Relying substantially on the Nevada Supreme Court's decision in *Fontainebleau Las Vegas Holdings, LLC v. A1 Concrete Cutting & Demolition, LLC*, 289 P.3d 1199 (Nev. 2012), which addressed a statute similar to § 33-992(A), the court of appeals held that the statute precludes equitable subrogation because subrogation would grant lien priority to an encumbrance recorded after laborers and materialmen had begun work on the property. *Weitz*, 233 Ariz. at 448–49 ¶¶ 21–24, 314 P.3d at 575–76. We disagree with this reasoning for several reasons.

**¶15** First, it misapprehends how equitable subrogation operates. When equitable subrogation occurs, the superior lien and attendant obligation are not discharged but are instead assigned by operation of law to the one who paid the obligation. Restatement § 7.6 cmt. a; *see also United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947) ("One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made."); *Sourcecorp*, 229 Ariz. at 272 ¶ 5, 274 P.3d at 1206 (defining "equitable subrogation" as "the substitution of another person in the place of a creditor, so that the

7

person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt" (quoting *Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935))). The subrogee is in the same position as if the superior lienholder had expressly assigned the superior lien to the subrogee. *See Sourcecorp*, 229 Ariz. at 275 ¶ 21, 274 P.3d at 1209; Restatement § 7.6 cmt. a. Because an equitably subrogated lien "attaches" when the superior lien was recorded, § 33-992(A) does not require that an intervening mechanics' lien be given priority. *Cf.* Restatement § 7.6 cmt. f, illus. 30 (recognizing that one who discharges the debt of a lienholder with priority over a mechanics' lien can be equitably subrogated to the superior lien even when applicable law provides that mechanics' liens have priority from the time work on the contract commenced).

¶16 Second, nothing in § 33-992(A) suggests that the legislature intended to preclude equitable subrogation in the mechanics' lien context. The statute's purpose is to protect the rights of laborers and materialmen who enhance the value of property. *Collins v. Stockwell*, 137 Ariz. 416, 418, 671 P.2d 394, 396 (1983). Equitable subrogation does not prejudice those rights. When a lien that is superior to a mechanics' lien is assigned to another through equitable subrogation, the mechanics' lien remains in the same position it occupied before subrogation. *See Sourcecorp*, 229 Ariz. at 276 ¶ 26, 274 P.3d at 1210 (noting that intervening lienholders remain in the same position after subrogation as before); Restatement § 7.6 cmt. e (providing that an intervening lienholder's priority position "is simply unchanged" through equitable subrogation).

¶17 Third, permitting equitable subrogation of a lien that is superior to a mechanics' lien is consistent with the legislature's treatment of junior lienholders' interests in foreclosure actions. Section 33-723 provides that a junior lienholder "shall be entitled to an assignment of all the [superior lienholder's] interest" by paying that person or entity the amount secured by the superior mortgages or deeds of trust together with interest and costs. Because the statute makes no exception for an intervening mechanics' lien, § 33-723 authorizes a junior lienholder to assume a superior lien position over any mechanics' lien by discharging the superior lien. We have no reason to conclude that the legislature intended to preclude assignment of a superior lien by equitable subrogation in the mechanics' lien context while permitting an assignment by statutory subrogation in a foreclosure action.

¶18         We hold that § 33-992(A) does not preclude equitable subrogation of a lien that is superior to a mechanics' lien.

## C.

¶19         Weitz alternatively argues, and the trial court agreed, that the Owners and Lenders cannot be equitably subrogated to First National's April 2005 deed of trust because they did not fully discharge Summit's obligation to First National, and Arizona does not permit partial equitable subrogation.  The Owners and Lenders counter that because they paid Summit's obligation as allocated to the sold condominium units and First National released those units from its deeds of trust, they have discharged their portion of the lien in full, and therefore partial satisfaction of the construction loan does not preclude equitable subrogation.

¶20         Equitable subrogation is generally permitted only when a person fully discharges a debt secured by a mortgage.  *See Sourcecorp*, 229 Ariz. at 272 ¶ 5, 274 P.3d at 1206.  "Partial subrogation to a mortgage is not permitted," because it "would have the effect of dividing the security between the original obligee and the subrogee, imposing unexpected burdens and potential complexities of division of the security and marshaling upon the original mortgagee."  Restatement § 7.6(a) cmt. a; *see Dietrich Indus. v. United States*, 988 F.2d 568, 572 (5th Cir. 1993) (reasoning that full discharge of debt is required to prevent prejudice to "the senior lienholder's attempt to collect the entire indebtedness secured by the senior lien" (citations omitted)); *Byers v. McGuire Props., Inc.*, 679 S.E.2d 1, 8 (Ga. 2009) (same); *Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519 (Tex. 1969) (to same effect).

¶21         We agree with the Owners and Lenders, however, that a prospective subrogee is required to discharge only the portion of an obligation that is secured by the property at issue.  The complexities and equities attendant to dividing security between the original obligee and the subrogee do not exist when the original obligee has released its lien against the property.  *Cf. Dietrich Indus.*, 988 F.2d at 572–73 (deciding that a real estate purchaser could be equitably subrogated to a senior lien even though the purchaser partially paid the obligation because the senior lienholder released its lien and therefore would not suffer prejudice from subrogation); *Byers*, 679 S.E.2d at 8 (concluding that a purchase money

9

lender's partial payment of a construction loan secured by a single mortgage on multiple parcels in a housing subdivision did not preclude equitable subrogation because the construction lender released the parcel at issue from its lien and would not suffer prejudice from the subrogation); 73 Am. Jur. 2d *Subrogation* § 25 (updated May 2014) (noting that the rule prohibiting partial subrogation "does not apply where the reason for it does not exist as where there is no possibility that the creditor could be . . . prejudiced"). And permitting equitable subrogation when a party discharges only part of an obligation secured by a single mortgage on multiple properties but obtains a release of the lien on the property at issue coincides with the Restatement's expansive view of equitable subrogation. *See Sourcecorp*, 229 Ariz. at 273 ¶ 10, 274 P.3d at 1207. Any inequities in such cases are appropriately considered when deciding whether equitable subrogation is needed to prevent unjust enrichment to an intervening lienholder.

¶22 We conclude that equitable subrogation of a mortgage is prohibited when it would divide security between the original obligee and a payor who discharges part of the obligation. But when the obligation is secured by a single mortgage on multiple properties and the obligee releases the property at issue from the mortgage lien in return for discharge of the entire obligation allocated to that property, equitable subrogation is permitted. Our holding is consistent with cases applying subrogation in the guarantor/creditor context. *See, e.g., W. Coach Corp. v. Rexrode*, 130 Ariz. 93, 97, 634 P.2d 20, 24 (App. 1981) (concluding that the rule disallowing subrogation of a guarantor to a creditor's rights unless full payment of debt is made is inapplicable to subrogation claims that would not impair the creditor's rights). Because First National released the sold units from its deeds of trust and ceased looking to those properties to satisfy Summit's remaining obligation, equitable subrogation is available.

**D.**

¶23 Weitz also argues that the court should not permit equitable subrogation because doing so would prejudice Weitz's interests. *See Sourcecorp*, 229 Ariz. at 275 ¶ 25, 274 P.3d at 1209 (holding that equitable subrogation is permitted only if it will not materially prejudice the intervening lienholders' interests). Weitz contends it would be prejudiced because it completed construction only after First National and Summit

promised payment from the condominium unit sales, and the Owners and Lenders failed to timely assert their equitable subrogation rights, thereby lulling Weitz into thinking it had first-lien priority while it completed construction.

¶24        Weitz failed to preserve these arguments for our review. It raised the former argument for the first time in its response to the Owners' and Lenders' second motion for reconsideration of the partial summary judgment ruling. The trial court did not permit a reply or oral argument before denying the motion, and the Lenders did not have an opportunity to address this argument or the supporting evidence. *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 508 ¶ 17 n.3, 269 P.3d 678, 684 n.3 (App. 2011) (not considering an issue raised "for the first time in a motion for reconsideration if the opposing party is deprived of an opportunity to respond with applicable evidence and arguments." (citation omitted)). Weitz asserted the latter argument for the first time before this Court and has therefore waived it for purposes of our review. *See Estate of DeSela v. Prescott Unified Sch. Dist. No. 1*, 226 Ariz. 387, 389 ¶ 8, 249 P.3d 767, 769 (2011). Neither the trial court nor the court of appeals addressed these arguments, and we decline to do so in the first instance. Weitz may present these arguments to the trial court on remand.

**E.**

¶25        Finally, Weitz argues that it would not receive an unearned windfall by having first-lien priority because it built the condominium units and should be paid for its work. The "windfall" sought to be avoided by equitable subrogation, however, does not relate to a lienholder's entitlement to payment of the outstanding debt. Rather, the "windfall" addresses the equity of advancing a lienholder's lien priority after a third party pays off a superior obligation. *See* Restatement § 7.6 cmt. a ("If there were no subrogation, . . . junior interests would be promoted in priority, giving them an unwarranted and unjust windfall.").

¶26        That Weitz is owed money for completing the condominium units does not mean it is entitled to a promotion in lien priority. *Cf. Sourcecorp*, 229 Ariz. at 275 ¶¶ 23–24, 274 P.3d at 1209 (stating that junior lienholder would receive a windfall by being promoted in priority unless homebuyers were equitably subrogated to the superior mortgage they paid

off). *But see Ex parte Lawson*, 6 So. 3d 7, 15–16 (Ala. 2008) (holding that even if Restatement § 7.6 applies, purchase-money lenders could not subrogate to a construction loan because the seller would reap the benefit of a subcontractor's work without paying for it). If Weitz's argument were correct, equitable subrogation would never apply as junior lienholders are always entitled to payment. Because equitable subrogation is not precluded in the mechanics' lien context, we reject a bright-line rule that homebuyers and their lenders can never be equitably subrogated to a construction lien that occupies a superior position to a mechanics' lien. Instead, whether equitable subrogation is warranted should hinge on the unique facts of each case.

## III. CONCLUSION

**¶27**        Section 33-992(A) does not preclude equitable subrogation that results in the subrogee, through assignment by operation of law, obtaining lien priority over a mechanics' lien. Accordingly, we hold that when a single mortgage is recorded against multiple parcels, a third party is not precluded from attaining equitable subrogation rights when it pays the pro rata amount of the superior obligation and obtains a full release of the parcel at issue from the mortgage lien. We therefore vacate the court of appeals' opinion and reverse the trial court's partial summary judgment. We remand to the trial court to decide whether equitable subrogation is appropriate in this case. The court should consider, among other things, whether equitable subrogation is needed to prevent Weitz from becoming unjustly enriched by a promotion in lien priority.