IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

CONTINENTAL LIGHTING &          )
CONTRACTING, INC., an Arizona    )
corporation,                     )
                                 )
    Plaintiff/Appellee, )   2 CA-CV 2010-0109
                                 )   DEPARTMENT B
      v.     )
                                 )   O P I N I O N
PREMIER GRADING & UTILITIES, LLC, )
                                 )
 Defendant/Appellee/Cross-Appellant, )
                                 )
REAL ESTATE EQUITY LENDING, INC., )
                                 )
 Defendant/Appellant/Cross-Appellee. )
_____ )

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause Nos. S1100CV200801567 and S1100CV200801909 (Consolidated)

Honorable William J. O'Neil, Judge

REVERSED AND REMANDED

Keller & Hickey, P.C.
 By Craig L. Keller and Ryan C. Curtis        Tempe
           Attorneys for Plaintiff/Appellee

Bueler Jones, LLP
 By Gordon S. Bueler            Chandler
    Attorneys for Defendant/Appellee/Cross-Appellant

Gust Rosenfeld P.L.C.
 By Scott A. Malm            Phoenix

  and

Ramras Legal PLC
  By Ari Ramras

Phoenix
Attorneys for Defendant/Appellant/Cross-Appellee

V Á S Q U E Z, Presiding Judge.

¶1        In this mechanics' lien foreclosure action, appellant Real Estate Equity Lending, Inc. ("REEL") appeals from the trial court's grant of summary judgment in favor of appellees Premier Grading & Utilities, LLC ("Premier") and Continental Lighting & Contracting, Inc. ("Continental").  REEL argues the court erred in finding that the doctrines of equitable subrogation and replacement did not apply and that Premier's and Continental's mechanics' liens had priority over REEL's refinancing mortgage.  For the reasons set forth below, we reverse and remand for further proceedings consistent with this decision.

## Factual and Procedural Background

¶2        We view the facts in the light most favorable to the party against whom summary judgment was entered.  *Simon v. Safeway, Inc.*, 217 Ariz. 330, ¶ 2, 173 P.3d 1031, 1033 (App. 2007).  In August 2005, Karl Conover, a real estate developer, purchased approximately ten acres of vacant real property in Apache Junction, Arizona.  Conover financed the purchase with a loan from REEL in the amount of $825,000, pursuant to a promissory note secured by a deed of trust on the property.  The deed of trust ("original deed of trust") was recorded on August 30, 2005.

¶3        Conover subsequently subdivided the property into thirty-eight lots, and, in August 2006, conveyed the property to his limited liability company, Casa Villa

2

Subdivision, LLC ("Casa Villa") by quit claim deed. Casa Villa then contracted with Premier to make improvements in the subdivision, and Premier and its subcontractor, Continental, began work on the property. Continental and Premier recorded their notices and claims of mechanics' liens in February and May 2008, respectively.

¶4 In September 2007, Casa Villa, with Conover acting on its behalf, refinanced the loan secured by the original deed of trust with REEL pursuant to a new promissory note in the amount of $1,000,000, which was secured by a deed of trust in favor of REEL. This deed of trust ("2007 deed of trust") was recorded on September 5, 2007. The escrow settlement statement for this second loan provided that $803,125.08 of the loan proceeds would be used to pay the outstanding balance of the loan secured by the original deed of trust. A portion of the proceeds were used to pay costs related to the close of escrow, and the remaining amount was disbursed to Casa Villa directly. REEL's lender's instructions to the title company handling the escrow further provided that the 2007 deed of trust was to be recorded in first position.

¶5 Casa Villa refinanced the property for a third time in January 2008. In this transaction, REEL agreed to make additional construction loans on lots one through seven, secured by a separate deed of trust on each lot ("2008 deeds of trust"). Some of the loan proceeds were used to pay a portion of the loan secured by the 2007 deed of trust. And, once again, REEL instructed the title company to record the 2008 deeds of trust on lots one through seven in first position.

¶6 Casa Villa ultimately defaulted on the notes secured by the 2007 and 2008 deeds of trust, and REEL sold all of the lots pursuant to its power of sale under the 2007

3

and 2008 deeds of trust. In May 2008, Continental initiated this mechanics' lien foreclosure action against REEL and Premier. In the meantime, Premier had filed a separate mechanics' lien foreclosure against REEL, and in October 2008 the trial court consolidated both actions.

¶7 REEL moved for summary judgment on Premier's and Continental's foreclosure claims, arguing that its 2007 and 2008 mortgages (hereafter collectively referred to as the "refinancing deeds of trust") had priority over both mechanics' liens under principles of equitable subrogation and that those liens had not been perfected properly in any event. Premier and Continental each filed cross-motions for summary judgment, to which REEL responded that it also was entitled to priority under the doctrine of replacement. The trial court denied REEL's motion for summary judgment and granted Premier's and Continental's motions, finding the doctrine of equitable subrogation did not apply and that both mechanics' liens had priority over REEL's refinancing mortgages. REEL filed a motion for clarification and reconsideration, which the court denied. After entry of final judgment in favor of Premier and Continental, REEL filed this appeal. Premier also filed a notice of cross-appeal challenging the court's award of interest on the judgment at a statutory rate of ten percent per annum.

**Discussion**

¶8 REEL argues the trial court erred in finding the doctrines of equitable subrogation and replacement did not apply to the refinancing mortgages and in granting summary judgment in favor of Premier and Continental. A trial court's grant of summary judgment is appropriate if the moving party is entitled to judgment as a matter of law.

4

Ariz. R. Civ. P. 56(c)(1); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998). And, the issue whether the trial court properly applied the doctrines of equitable subrogation and replacement involves a question of law, which we review de novo. *See Sun Valley Fin. Servs. of Phoenix, L.L.C. v. Guzman*, 212 Ariz. 495, ¶ 17, 134 P.3d 400, 404 (App. 2006).

**Equitable Subrogation**

¶9 Generally in Arizona, "previously recorded liens have priority over subsequent mechanics' liens recorded after labor has begun or materials have been furnished." *Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, ¶ 6, 95 P.3d 542, 544 (App. 2004). Mechanics' liens take priority over later-recorded encumbrances. *Id.*; A.R.S. § 33-992; *Nw. Fed. Sav. & Loan v. Tiffany Constr. Co.*, 158 Ariz. 100, 104, 761 P.2d 174, 178 (App. 1988) (mechanics' lien generally has priority over all liens attaching after work begins). Equitable subrogation, however, allows "a subsequent lender who supplies funds used to pay off a primary and superior encumbrance to be substituted into the priority position of the primary lienholder, despite the recording of an intervening lien." *Lamb Excavation*, 208 Ariz. 478, ¶ 6, 95 P.3d at 544.

¶10 In *Lamb Excavation*, this court clarified the appropriate legal standard for assessing whether equitable subrogation should apply. *Id.* Noting that Arizona's

5

approach is consistent with the Restatement (Third) of Property (Mortgages),[1] we held "the doctrine will apply when there is an express or implied agreement to subrogate, . . . and when an intervening lien claimant suffers no prejudice." *Id*. ¶¶ 6, 13. A subsequent creditor's knowledge, actual or constructive, of an intervening lien is irrelevant in deciding whether equitable subrogation should apply. *Id.* ¶ 15. However, the second loan must be made by a different lender than the holder of the first deed of trust, because, by definition, one cannot be subrogated to one's own previous deed of trust. Restatement § 7.6 cmt. e; *see also Sun Valley Fin.*, 212 Ariz. 495, ¶ 18, 134 P.3d at 404 (subrogation is "substitution of another person in the place of a creditor"), *citing Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935).

¶11        In this case, however, REEL's 2007 loan paid off and discharged its own original loan made in 2005. Under the Restatement, where a loan secured by an original deed of trust is refinanced by the same lender, priorities are determined under principles of replacement and modification of mortgages, not equitable subrogation. *See* Restatement § 7.6 cmt. e (in same-lender refinancing, "a mortgage securing the new loan may be given the priority of the original mortgage" pursuant to replacement and

---

[1]Section 7.6(a) of Restatement (Third) of Property (Mortgages) provides in pertinent part:

> One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

modification of mortgages). Accordingly, because equitable subrogation does not apply in a single-lender refinancing transaction, REEL's argument below that it had priority over Premier's and Continental's mechanics' liens on the basis of equitable subrogation lacked merit and the trial court therefore did not err in so finding.[2]

¶12 REEL nevertheless contends that "[b]ecause equitable subrogation has been adopted in Arizona, the analogous legal theory of replacement should be applied in a single-lender refinancing transaction." Premier and Continental contend REEL has waived its replacement argument on appeal by failing to raise it below. The general law in Arizona is that legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits. *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 17, 158 P.3d 232, 238 (App. 2007). If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal. *Id.*

¶13 In its motion for summary judgment, REEL argued only that it was entitled to priority over the mechanics' liens on the basis of equitable subrogation. REEL did,

---

[2]In denying REEL's motion for summary judgment and granting Premier's and Continental's cross-motions for summary judgment, the trial court found the doctrine of equitable subrogation inapplicable because "equitable subrogation was not contracted for" between Casa Villa and REEL; Casa Villa "knew or should have known of the priority of the [contractors]"; and the original deed of trust was released and, as a consequence, "there was no unjust enrichment by Continental and Premier." The court also stated that even if equitable subrogation applied, it "would not be equitable." Based on general principles of equitable subrogation and our holding in *Lamb Excavation*, we find the trial court erred in its reasoning. But because the court correctly ruled that the doctrine of equitable subrogation did not apply to this case, we affirm its ruling as to REEL's equitable subrogation argument. *Washburn v. Pima County*, 206 Ariz. 571, ¶ 7, 81 P.3d 1030, 1034 (App. 2003) (we affirm trial court's judgment if correct for any reason).

7

however, make the replacement loan argument in its response to Premier's and Continental's cross-motions for summary judgment. Although REEL had raised this argument prior to the trial court's ruling, neither Premier nor Continental responded to the merits of the replacement argument. Nor did the court address the merits of the argument in ruling on the motions for summary judgment. Nonetheless, we conclude REEL properly preserved the replacement argument for appeal.

¶14     After the trial court's grant of summary judgment, REEL filed a motion for clarification of the court's ruling, seeking to clarify whether the court had "refused to consider [REEL's replacement] argument or whether it ha[d] considered but rejected th[e] argument." Both Premier and Continental argued the merits in response to REEL's motion for clarification. Specifically, they claimed replacement did not apply because REEL's refinancing mortgages involved different debtors. The court denied REEL's motion, stating it had "considered the arguments of all parties and ruled granting summary judgment thereby rejecting all opposing arguments." Thus, because the court had the opportunity to rule on the legal theory of replacement, and apparently did so, rejecting it, we address REEL's argument on appeal.

**Replacement of Mortgages**

**A. Applicability of the Replacement Doctrine in Arizona**

¶15     The parties have not cited, and we have not found, any reported case in this state that addresses the doctrine of replacement. In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law on a particular subject, provided its application "is logical, furthers the interests of justice, is

8

consistent with Arizona law and policy, and has been generally acknowledged elsewhere." *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, ¶ 26, 972 P.2d 658, 665 (App. 1998).

¶16     For the resolution of priority disputes involving same-lender mortgage refinancing, we refer to § 7.3 of the Restatement (Third) of Property (Mortgages) (1997), titled "Replacement And Modification Of Senior Mortgages:  Effect On Intervening Interests."[3]  As to replacement mortgages, the Restatement provides:

> If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
>
> 1)  to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or
>
> 2)  to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

§ 7.3(a).

---

[3]Although this section governs both replacement and modification of mortgages, for simplicity we refer to the rule as replacement.  And to avoid confusion in our general discussion we use the term "mortgage," the term used in the Restatement, to include deeds of trust.  The result under either replacement or modification is identical.  *See generally* Restatement § 7.3.  The practical differences between the two, however, are as follows: replacement occurs when a lender releases its original lien of record, discharging it with the proceeds of the second loan secured by a new mortgage that is recorded either immediately or shortly after releasing the initial loan as part of the same replacement loan transaction.  Restatement § 7.3 cmt. a; Grant S. Nelson & Dale A. Whitman, *Real Estate Transfer, Finance, and Development*, 835-36 (7th ed. 2006).  In contrast, modification occurs when the senior lienholder and the debtor agree to modify the terms of the senior mortgage or the obligation it secures.  The original mortgage remains of record and the modifications are reflected in an amendment agreement that also is recorded. Restatement § 7.3 cmt. b; Nelson & Whitman, *supra*, at 837.

**¶17** As the Restatement explains, the replacement of senior mortgages is a common occurrence whereby a senior lender and the borrower agree to certain changes in the terms of the secured debt, often as a means to deal with borrower financial distress. Restatement § 7.3 cmt. a. As a practical matter, requiring the consent of the holders of junior interests for such transactions might deny the parties needed flexibility in dealing with changing economic and business conditions. *Id.* Application of the replacement rule thus allows a senior lender that discharges its mortgage of record and records a replacement mortgage to keep its priority as against the holder of an intervening interest in the property. *Id.* As this case illustrates, such transactions "can create priority problems vis-à-vis intervening junior lienors." *Id.* The original lender therefore will retain its priority only to the extent of changes to the original loan that do not materially prejudice the junior lienholder. Restatement § 7.3(a)(1).

**¶18** Under the rule, any potential impairment to the rights of a junior lienholder by the replacement mortgage is eliminated by denying the refinancing lender priority as to those provisions that are prejudicial to the junior lienholder's interests. *See id.* § 7.3(a). Thus, for example, to the extent of any increased debt as a result of changes to the original loan, the senior mortgagee will lose priority to intervening interests. The replacement rule therefore "protects the legitimate expectations of the holders of junior interests, while at the same time denying them the ability to veto workouts or other flexible restructuring arrangements between mortgagors and senior lenders." Restatement § 7.3 cmt. a.

¶19      Other jurisdictions that have addressed the replacement doctrine in single-lender refinancing priority disputes generally have applied it to allow the senior lender to maintain priority, to the extent the replacement loan terms do not materially prejudice the junior lienholder. *See, e.g.*, *Fleet Bank of New York v. County of Monroe Indus. Dev. Agency*, 637 N.Y.S.2d 870, 871 (App. Div. 1996) (when lender's modification of its original mortgage did not substantially impair security interest of intervening lienholder, lienholder not entitled to elevation of its lien over that of lender); *Sheppard v. Interbay Funding, LLC*, 305 S.W.3d 102, 108-09 (Tex. App. 2009) (lender replacing its own mortgage on property with new mortgage and discharging its initial mortgage with proceeds from refinancing entitled to maintain first lien in amount representing balance of first lien prior to refinance). Cases, however, in which a junior lien becomes senior to the replacement mortgage are the exception rather than the rule. And, in those cases, the courts did not do so because they rejected the replacement doctrine generally. Rather, the courts denied replacement mortgage priority upon a finding of substantial prejudice to the junior lienholder. *See, e.g.*, *Nature's Sunshine Prods., Inc. v. Watson*, 174 P.3d 647, 652-53 (Utah Ct. App. 2007) (replacement did not apply to same-lender refinancing when obligation amount of new mortgage sixteen times larger than obligation on initial mortgage sixteen years earlier and materially prejudicial to intervening lienholder).

¶20      The rationale behind the doctrine of replacement is consistent with the rationale and policy considerations for equitable subrogation. "The intervening lienholder suffers no prejudice because its lien maintains the same position it occupied before the replacement lender satisfied the pre-existing obligation." *Lamb Excavation*,

11

208 Ariz. 478, ¶ 11, 95 P.3d at 545, *citing* Restatement § 7.6 cmt. a ("The holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged."). And, the result from the application of replacement is "analogous to subrogation," and the requirements for its application "are essentially similar to those for subrogation." *See* Restatement § 7.6 cmt. e. Under both rules, the lender who pays off and discharges the original loan retains the priority of the original lender and holds a superior position to that of intervening lienholders.

¶21 Moreover, replacement principles under the Restatement's approach protect the expectations of commercial lenders who, absent the rule, may risk the loss of priority to intervening lenders and who may be reluctant to refinance mortgages otherwise. In turn, the rule protects the borrowers' ability to refinance troubled loans with the same lender on more favorable terms.[4]

¶22 In light of the foregoing, we adopt the Restatement approach and hold that where a senior lien is released of record and, as part of the same transaction, is replaced with a new lien, the latter retains the same priority as its predecessor, except to the extent that any change in the terms of the security document or the underlying debt it secures is materially prejudicial to a junior lienholder's interest in the real property.

---

[4]Notably, the replacement rule is consistent with other laws of this state. For instance, Arizona's secured transaction law, as adopted in Chapter 9, Title 47 of the Arizona Revised Statutes, allows a holder of a purchase money security interest to retain its superior priority status despite subsequent refinancing of the obligation under the original security interest. *See* A.R.S. § 47-9103(F) ("In a transaction other than a consumer goods transaction, a purchase money security interest does not lose its status as such, even if . . . [t]he purchase money obligation has been renewed, refinanced, consolidated or restructured.").

**B. Application of Replacement in This Case**

¶23     We next consider whether application of the replacement doctrine is appropriate in the case before us. In the 2007 mortgage transaction, REEL loaned Casa Villa $1,000,000, which was used in part to fully discharge the debt secured by the original deed of trust.[5] The record demonstrates the original deed of trust was released of record upon satisfaction of the $803,125.08 outstanding balance of the original debt it secured. A deed of trust was then recorded to secure the entire $1,000,000 loan. Thus, based on the principles and requirements outlined above, the 2007 deeds of trust assumed the priority of the original deed of trust it replaced to the extent of $803,125.08—the original principal amount of the 2005 debt the 2007 mortgage transaction paid.[6] *See* Restatement § 7.3 cmt. c; *see also Interbay Funding*, 305 S.W.3d at 108 (under principles set forth in section 7.3, lender entitled to maintain first lien on real property in amount representing balance of first lien prior to refinance); Restatement § 7.6 cmt. e (defining refinancing as "the payment of a loan with the proceeds of another loan").

¶24     Application of the rule of replacement in this case does not materially prejudice Premier's and Continental's interests in the property. After the 2007 deed of

---

[5]Premier argues replacement principles do not apply to REEL's 2007 deed of trust because the nature of the real property had changed from the time of the original deed of trust, namely, the land had been subdivided into thirty-eight separate parcels and was no longer "vacant." We reject this argument because the property secured by the 2007 deeds of trust, although described as thirty-eight lots, was still the same property in a subdivided form.

[6]Although REEL contends the doctrine of replacement also applies to the 2008 deed of trust, the record before us is insufficient to make that determination. We therefore leave that issue for the trial court to decide on remand.

13

trust assumed the priority position of the original deed of trust, Premier's and Continental's mechanics' liens remained in the same position they had occupied before replacement. And the record establishes that when Premier and Continental contracted to perform construction work on the property, they understood the original mortgage was in first position. "They therefore accepted the risk that [Casa Villa] would not pay them and would not pay the first lienholder, thereby defeating their liens." *Lamb Excavation*, 208 Ariz. 478, ¶ 18, 95 P.3d at 547. Absent replacement, however, Premier and Continental would be elevated to a higher priority status and would receive a windfall at REEL's expense. *Id*. But because REEL's 2007 deed of trust involved an increase in the debt secured, Premier and Continental gained priority over REEL to the extent of that increase.[7]

**¶25** Nevertheless, Premier and Continental argue, as they did below, that replacement should not apply because the original deed of trust and the 2007 deed of trust do not involve the same debtors. It is undisputed Conover was the debtor in the original deed of trust transaction and he subsequently conveyed the property to Casa Villa, the debtor in the 2007 deed of trust transaction. The Restatement is silent on whether the debtor must be the same in both transactions for the replacement doctrine to apply. *See* Restatement § 7.3. And absent Arizona authority, we look for guidance to other jurisdictions that have addressed this issue. *See Hull v. DaimlerChrysler Corp.*, 209 Ariz.

---

[7]For the same reason, Premier and Continental hold priority over any other balance increase above the loan amount secured by REEL's original deed of trust resulting from Casa Villa's subsequent refinancing of the mortgage as to lots one through seven.

14

256, ¶ 10, 99 P.3d 1026, 1028 (App. 2004) (cases from other jurisdictions persuasive in resolving matter of first impression in Arizona courts).

¶26　　　　In *Burney v. McLaughlin*, 63 S.W.3d 223, 226, 234 (Mo. Ct. App. 2001), the court concluded the senior mortgage modified by the parties was entitled to retain priority as against the junior interest even though the borrower under the modified mortgage was different than the borrower under the initial mortgage. Likewise, in *Shanks v. Phillips*, 55 S.W.2d 258, 259-60 (Tenn. 1932), the court apparently did not consider, in holding that the renewal mortgage had priority over an intervening lien, the fact that the borrower under the renewal mortgage was the grantee of the original borrower.

¶27　　　　Although the Restatement also is silent on the same debtor issue in the context of equitable subrogation, other courts that follow the Restatement approach for assessing whether equitable subrogation should apply have applied the doctrine even where the borrowers in the initial and refinancing loans are different. *See E. Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 336 (Mass. 1998) (condominium purchaser under new mortgage, whose proceeds used to satisfy original deed of trust, entitled under equitable subrogation to have new mortgage given same priority over intervening lien despite not being initial borrower); *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 74-75 (Nev. 2003) (wife being new refinancing mortgagor did not preclude refinancing lender from assuming superior priority over intervening lien under equitable subrogation doctrine); *Deutsche Bank Nat'l Trust Co. v. Roberts*, 233 P.3d 805, 809 (Okla. Civ. App. 2010) (finding doctrine of equitable subrogation applicable to mortgage refinancing transaction

15

where husband sole borrower under refinancing mortgage despite both husband and wife being borrowers under original mortgage).[8]   We therefore conclude that a change in borrowers is not a determinative factor in deciding whether replacement should apply. Rather, when, as here, the requirements for application of the replacement rule have been met, the rule applies regardless of the identity of the debtor at the time of the refinancing.

¶28        We therefore reject Premier's and Continental's argument and find that replacement applies in this same-lender refinancing transaction.  REEL's 2007 deed of trust assumed the first-priority position of the original deed of trust to the extent of the remaining balance of the loan it discharged, secured by the original deed of trust.  The trial court thus erred in denying REEL's motion for summary judgment and granting Premier's and Continental's cross-motions for summary judgment.[9]

---

[8]It appears that only the Nevada supreme court has even considered the fact that the borrower in the refinancing loan transaction was different from the borrower in the initial loan. Even then, it merely noted that the change in the identity of the mortgagor did not prejudice the intervening lienholders. *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 75 (Nev. 2003).  *See also Kim v. Lee*, 31 P.3d 665, 669 (Wash. 2001) (when all other requirements satisfied, equitable subrogation applied even though borrowers were different parties having transferred title to property as gift from one to another).

[9]REEL also argues Continental's and Premier's liens "are extinguished" because the lis pendens were not "acknowledged as required by A.R.S § 33-411(B)."  However, REEL cites to no authority, nor have we found any, that makes the acknowledgment requirements of § 33-411(B) applicable to lis pendens.  The only authority REEL refers to, *HCZ Constr., Inc. v. First Franklin Fin. Corp.*, merely holds that A.R.S. §§ 33-998 and 12-1191 together require a lis pendens to be filed within five days of filing an action to foreclose a mechanics' lien and that failure to do so results in extinguishment of the lien. 199 Ariz. 361, ¶¶ 8-9, 18 P.3d 155, 157-58 (App. 2001).  Furthermore, chapter 4 of title 33, entitled "Conveyances and Deeds," deals with instruments that convey an interest in real property, whereas a lis pendens is merely a form of notice required by the court that litigation is pending concerning particular real property.  *See* § 12-1191; *Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, ¶ 11, 199 P.3d 646, 650 (App.

16

**Disposition**

¶29      For the reasons stated above, we vacate the trial court's denial of REEL's motion for summary judgment and its summary judgment in favor of Premier and Continental and remand the case for further proceedings consistent with this decision. In the exercise of our discretion, we deny REEL's request for attorney fees on appeal.

/s/ *Garye L. Vásquez*

GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Judge

/s/ *Virginia C. Kelly*

VIRGINIA C. KELLY, Judge

---

2008) (lis pendens provides constructive notice to prospective purchasers and lenders of pending lawsuit that may affect title to real property). Thus nothing in the nature of a lis pendens indicates that it should be subject to § 33-411(B)'s acknowledgment requirement, and REEL's argument that a lis pendens must be acknowledged lacks merit.

We do not address Premier's cross-appeal on the issue of whether the trial court erred in limiting judgment interest to a statutory ten percent, as opposed to the eighteen percent contracted for by Premier and Casa Villa in their construction agreement.

17