NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ANGELA B., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF CHILD SAFETY, A.E., M.E., *Appellees*.

No. 1 CA-JV 15-0104
FILED 8-25-2015

---

Appeal from the Superior Court in Maricopa County
No.  JD29171
The Honorable Kristin C. Hoffman, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Michael J. Brown and Judge Kent E. Cattani joined.

---

H O W E, Judge:

¶1        Angela B. ("Mother") appeals the determination that her two minor daughters, A.E., born in November 1998, and M.E., born in April 2008, were dependent children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        One September day, A.E. called the Arizona Department of Economic Security's[1] hotline—as she had done numerous times in the past when she and Mother fought. A.E. alleged that Mother had physically abused, threatened, and neglected her. She said that she was afraid of Mother, whose anger seemed to be escalating, and that Mother was not being treated for her bipolar disorder. A.E. also said that Mother had sat on her several times, making it difficult to breathe; she also described when Mother chased her with a knife.

¶3        The Department took temporary custody of A.E. and her younger sister M.E. It filed a petition alleging that the children were dependent. The Department alleged that Mother neglected them and was unable to provide proper and effective parental care and control due to mental-health issues and failure to provide a stable home.

¶4        Because of the mental-health allegations, Mother agreed to a psychological evaluation. During the evaluation, she denied that she had "ever neglected, endangered, failed to protect, or abused her children" or that she had any mental-health issues that would impact her parenting. Although Mother described her relationship with her daughters as "close," collateral records, including other reports and information available to the Department, indicated a "significant discord in the relationship." Mother

---

[1]        The Arizona Department of Economic Security is substituted for the Arizona Department of Child Safety in this matter. *See* Ariz. R. Civ. App. P. 27; S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted). For convenience, we refer to both as "the Department."

had "physical altercations" with her children, and the children had told the psychologist that they wanted to live with their father.

¶5        Mother reported that she was diagnosed with ADHD. She denied having bipolar disorder, but the psychologist noted that Mother's self-reporting was inconsistent with collateral records. Mother also reported a history of being prescribed various psychotropic medications, taking them, but then stopping because she did not like the side effects. The psychologist diagnosed Mother with ADHD in partial remission, major depressive disorder in full remission, and emotional and physical abuse of a former spouse.

¶6        The psychologist concluded that the children would be at risk in Mother's care due to her mental-health issues: "[I]f it is determined that [Mother] has a bipolar disorder, which is being untreated, her children would be at risk. Collateral records noted she had aggressive and violent behavior, which was attributed to the bipolar disorder." The psychologist also noted concerns about Mother's judgment, including Mother's decision to continue to have contact with a man A.E. said had made sexually inappropriate comments to her and with a boyfriend A.E. said had sexually abused her. The psychologist concluded that "[t]his suggests she puts her relationships with men in front of the wellbeing of her daughter."

¶7        Because of Mother's history of instability, the psychologist recommended that Mother maintain a minimum of six months of steady employment and housing before the Department addressed whether to return the children to her care. The psychologist explained that if Mother were unable to maintain employment or stable housing, she would have difficulty meeting her children's basic needs, which would place the children at risk for neglect.

¶8        At the contested dependency hearing, Mother objected to the admission of a police report documenting A.E.'s sexual assault allegations against one of Mother's male friends. The juvenile court found the report relevant and admitted it, but stated it would "decide what weight to give it." When Mother testified, she admitted that several persons had sexually abused A.E. while in her care. She also admitted that she had previously spanked A.E. and slapped M.E.

¶9        Mother testified that she and the children were living in a trailer for three months when the Department took the children into custody. Before that, they stayed in a shelter for five weeks, a hotel for three days, with friends for a few days, and in another trailer for three months.

Mother explained that they moved often because she had trouble finding affordable housing. She also said that she was employed only part-time and was unable to find a full-time job that "fit."

¶10 Mother agreed that she had mental-health issues, including "[b]ipolar, ADHD, depression, and anxiety," and admitted that these conditions made parenting difficult for her. Mother testified that she had been prescribed various medications for those disorders, but had always stopped taking them because of their side effects. With her most recent medication, Mother explained that she was "a little bit calmer," but she had "a lot of symptoms with it that are worse." Mother questioned whether she needed any kind of medication: "I'm not sure of—that I really need it, because I can't find one that's helping my situation."

¶11 The case manager testified that the children's safety would be at risk if they were returned to Mother. She stated that Mother's history of not following her treatment for her mental illness showed that she was unable to care for A.E. The case manager also stated that she did not believe that Mother was able to provide the children stable housing because of Mother's "sporadic residence, moving from place to place."

¶12 During cross-examination, Mother tried to elicit testimony about A.E.'s behavior in foster homes, specifically that she had been moving between them. The Department objected, arguing that A.E.'s behavior in foster homes was irrelevant. Mother countered that the Department was "blaming [her] . . . for not being able to take care of" A.E. and therefore the child's difficult behavior was relevant. The court sustained the objection.

¶13 After considering the evidence, the juvenile court found the children dependent. The court made clear that it was not basing its ruling on the sexual abuse allegations. The court found family reunification the appropriate case plan. It ordered services for Mother and for the children, including counseling for A.E. and a neurological evaluation referral for M.E. Mother timely appealed.

**DISCUSSION**

¶14 Mother argues that the juvenile court erred by finding the children dependent and abused its discretion by admitting an undisclosed police report and excluding testimony about A.E. in foster care. On review, we view the evidence in the light most favorable to sustaining the court's findings, but we review de novo the court's interpretation and application

4

of the dependency statute. *Oscar F. v. Ariz. Dep't of Child Safety*, 235 Ariz. 266, 267–68 ¶ 6, 330 P.3d 1023, 1024–25 (App. 2014).

## 1. The Children Dependent as to Mother

**¶15** Mother argues that no reasonable evidence supports the juvenile court's dependency finding. Before a child can be found dependent, the Department must prove by a preponderance of the evidence one of the grounds for a finding of dependency set forth in A.R.S. § 8–201(14)(a). Under this statute, a dependent child is one "[i]n need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care and control" or whose "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8–201(14)(a)(i), (iii). Neglect includes the "inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8–201(24)(a). Because the primary consideration in a dependency case is the child's best interests, we afford broad discretion to the juvenile court. *Joshua J. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 417, 424 ¶ 29, 286 P.3d 166, 173 (App. 2012).

**¶16** Here, the evidence supports the juvenile court's dependency determination. The record shows that Mother had been unable to provide stable housing for the children. Mother testified that she and the children moved often, staying at various locations only for a few days, weeks, or months. Mother admitted that they moved often because she could not find affordable housing. Mother also testified that she was working part-time and was having trouble finding full-time work that suited her. Further, the case manager testified that Mother's "sporadic residence" would put the children's safety at risk if they were returned to Mother.

**¶17** Mother counters that she remedied this circumstance by the hearing date because she had been living in the same apartment for five months and had steady employment. But because of Mother's history of instability, a psychologist recommended that Mother maintain a minimum of six months of steady housing and employment before the Department considers returning the children. The record shows that Mother had not done so and returning the children to her beforehand would have put them at risk of neglect.

¶18        The record also shows that Mother's mental-health issues have resulted in neglect and improper and ineffective parental care and control of the children. Mother testified that she had mental-health issues, and she admitted that these conditions made it difficult for her to parent the children. Further, the psychologist reported that Mother had aggressive and violent behavior, which was attributed to the bipolar disorder. A.E. has called the Department's hotline numerous times, reporting that she was afraid of Mother, that Mother was physically abusing, threatening, and neglecting her, and that Mother's bipolar disorder was going untreated. By leaving her bipolar disorder untreated, Mother put her children at risk. Mother also admitted—during the hearing and to a psychologist—that she had been prescribed various medications for those disorders, but had always stopped taking the medications because of their side effects. Consequently, Mother's history of failing to treat her mental-health issues prevented her from safely and effectively parenting the children.

¶19        The record provides sufficient evidence to support the juvenile court's finding that Mother neglected her children and was unable to provide them with proper and effective parental care and control because of her unstable housing and her mental health issues. Accordingly, the court did not err in adjudicating A.E. and M.E. dependent.

## 2. Evidence Regarding A.E.'s Sexual Abuse

¶20        Mother next argues that the juvenile court deprived her of due process because, although the dependency petition did not allege "failure to protect," the primary focus of the evidence and the Department's argument related to allegations of A.E.'s sexual abuse. But Mother waived this issue because she failed to present it to the juvenile court. *See Continental Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶ 12, 258 P.3d 200, 204 (App. 2011) (providing that "legal theories must be presented timely to the trial court," and if not, then they are waived on appeal); *Louis C. v. Ariz. Dep't of Child Safety*, -- P.3d -- ¶ 5, 715 Ariz. Adv. Rep. 36 (App. 2015) ("[W]e generally do not consider issues, even constitutional issues, raised for the first time on appeal.").

¶21        Regardless of the waiver, the juvenile court clearly indicated that it did not find dependency based on sexual abuse. Although Mother claims that it "cannot be fairly said that the trial court disregarded the evidence and argument presented on this undisclosed evidence and theories," a juvenile court is presumed to know and apply the rules of evidence and to not consider inadmissible matters in making its findings. *See State v. Warner*, 159 Ariz. 46, 52, 764 P.2d 1105, 1111 (1988). We see no

reason to doubt this presumption, especially because the record supports the juvenile court's dependency order on the ground alleged by the Department. *See supra* at ¶¶ 15–19.

**¶22** Correspondingly, Mother argues that the juvenile court erred in admitting the undisclosed police report that contained A.E.'s allegations of sexual abuse. She contends that the Department did not comply with Juvenile Rule 44(B)(2), which provides that a party intending to introduce exhibits into evidence disclose an exhibit list and give copies to any opposing party, and "[n]o exhibits shall be used at trial other than those disclosed in accordance with this rule, except for good cause shown." But Mother also waived this argument by not presenting it to the juvenile court. *See Continental Lighting & Contracting, Inc.*, 227 Ariz. at 386 ¶ 12, 258 P.3d at 204. Mother merely objected to relevancy, thereby depriving that court the opportunity to consider whether good cause was established.

**¶23** Waiver notwithstanding, Mother has not shown—and the record does not indicate—that she was prejudiced by the court's ruling. A trial court has broad discretion in admitting and excluding evidence, and we will not disturb its decision absent a clear abuse of its discretion and resulting prejudice. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82 ¶ 19, 107 P.3d 923, 928 (App. 2005). Here, Mother acknowledged that A.E. had been sexually abused. Moreover, although the court admitted the police report because it included A.E.'s statements of both abuse and neglect, the court expressly stated that its findings were not based on alleged sexual abuse, and the record supports the court's findings on the grounds alleged.

### 3. Evidence Regarding A.E.'s Behavior in Foster Care

**¶24** Mother next argues that the juvenile court abused its discretion by excluding testimony about A.E.'s behavior in foster care. She contends that the special needs or issues of a child must be considered in determining whether Mother was adequately exercising care and control of A.E. But here, the excluded evidence was cumulative because the juvenile court had already heard evidence about A.E.'s difficult behavior in and out of foster care. Although the court precluded the evidence based on relevance, we may nonetheless affirm the court's ruling if it reached the right result for the wrong reason. *Powers v. Guaranty RV, Inc.*, 229 Ariz. 555, 560 ¶ 13, 278 P.3d 333, 338 (App. 2012) ("We will affirm the trial court's judgment even though the [] court may have reached the right result for the wrong reason."). Because the evidence at issue would have been cumulative to other properly admitted evidence, Mother has not shown

that the court's decision prejudiced her case. *See Lashonda M.*, 210 Ariz. at 82 ¶ 19, 107 P.3d at 928. Consequently, the juvenile court did not abuse its discretion in precluding the evidence.

## CONCLUSION

¶25        For the foregoing reasons, we affirm.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : ama