NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.K. and A.K.

No. 1 CA-JV 23-0006
FILED 5-30-2023

---

Appeal from the Superior Court in Maricopa County
No. JD40793
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

¶1 Letitia V. ("Mother") appeals the juvenile court's order terminating her parental rights to her children, L.K. and A.K. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In October 2020, the Department of Child Safety ("DCS") received reports that Mother and Richard K. ("Father") were engaged in illicit drug use that posed safety risks to their three children, J.K., L.K., and A.K. Mother disclosed to DCS that she and Father frequently used methamphetamine, opiates, and marijuana. After refusing substance abuse services offered by DCS, Mother left the home in December 2020, and DCS had no contact with her for several months thereafter.

¶3 DCS filed a dependency petition in May 2021, alleging that the children were dependent as to Mother and Father due to the parents' admitted use of illicit substances. DCS also alleged that Mother's "current whereabouts are unknown."

¶4 Both parents appeared telephonically at the initial dependency hearing in May 2021. The court appointed counsel for each parent and continued the hearing to the following month. Neither parent appeared at the continued hearing. The court found the three children dependent with a case plan of family reunification. Initially, DCS placed all three children with their maternal aunt. Because the oldest child, J.K., began to exhibit problematic behaviors, he was later moved to a residential group home.

¶5 Thereafter, DCS had no further contact with either parent for over a year, and its efforts to locate them were unsuccessful. Other than a Facebook message to the children's placement in March 2022 extending birthday wishes to the youngest child, the parents had no contact with the children.

**¶6**         In May 2022, DCS moved to terminate the parents' parental rights to the three children on grounds of abandonment, *see* A.R.S. § 8-533(B)(1), and substance abuse, *see* A.R.S. § 8-533(B)(3). Both parents appeared at the status conference in August 2022. The court continued the status conference to the following month.

**¶7**         When she met with DCS later that month, Mother admitted to ongoing substance abuse. DCS referred Mother for substance abuse treatment, but the provider closed out the services because Mother failed to complete the initial assessment. In September 2022, DCS referred Mother for substance abuse testing. She tested multiple times in September and October, testing positive for methamphetamine and fentanyl every time.

**¶8**         At a continued hearing in September, Mother's counsel told the court that "Mother would like visits" with the children. Because so much time had passed since Mother's last contact with the children, the court ordered a psychological consultation to determine whether visitation with her would adversely affect the children. The consulting psychologist recommended that Mother be permitted no contact with the children until she "demonstrate[d] consistency and the ability to follow through with contact at a set time." The psychologist suggested that Mother be required to contact the DCS caseworker "two times per week at a set time (i.e., Tuesdays and Thursdays at 4 pm)" to demonstrate consistent follow-through before any visits were scheduled.

**¶9**         Mother was directed to contact the case manager twice a week at a predetermined time. At a hearing the following month, the DCS caseworker acknowledged that Mother had complied. The court and the children's guardian ad litem nonetheless remained concerned that visitation with Mother after such an extended period without contact would be emotionally harmful to L.K. and A.K. Finding that visitation with Mother created "a serious risk of emotional harm" to L.K. and A.K., the court entered an order denying visitation until another psychological consultation could be conducted.[1]

**¶10**         After a trial the following month, the court terminated Mother's parental rights to L.K. and A.K. on both abandonment and

---

[1] The court also ordered, however, that Mother could have visitation with J.K., the oldest child, in accordance with J.K.'s wishes.

substance abuse grounds.[2] Mother timely appealed.[3] We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶11      Although parents' rights to custody and control of their children is fundamental, it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The parental relationship may be terminated if the juvenile court finds, by clear and convincing evidence, at least one statutory ground for termination under A.R.S. § 8-533(B) and further finds, by a preponderance of the evidence, that termination is in the child's best interest. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 13 (2022). Statutory grounds for termination include abandonment of the child and the parent's substance abuse. A.R.S. § 8-533(B)(1), (3).

¶12      Before seeking the termination of parental rights on substance abuse grounds, DCS is required to try to preserve the parent-child relationship by making reasonable efforts to provide rehabilitative services to the parent. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, 455, ¶¶ 12, 19 (App. 2005). To do so, DCS must "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 34, 37 (App. 1999). DCS is not, however, required to "provide every conceivable service or to ensure that a parent participates in each service it offers," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994), nor is it required to "undertake rehabilitative measures that are futile," *see Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.

¶13      DCS is not statutorily required to provide reunification services when the parental rights are terminated on grounds of abandonment under A.R.S. § 8-533(B)(1). *See Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 510, ¶ 11 (App. 2008) ("[N]either [A.R.S.] § 8-533 nor federal law requires that a parent be provided reunification services before the court may terminate the parent's rights on grounds of abandonment."); *see also Roland T. v. Jessica D.*, 1 CA-JV 22-0084, 2023 WL 1794165, at *2, ¶ 16 (Ariz. App. Feb. 7, 2023) (mem. decision) ("DCS is not required to provide reunification services before seeking severance under the abandonment

---

[2] DCS originally moved to terminate the parents' rights to their oldest child, J.K., as well, but later withdrew its termination motion as to J.K.

[3] The court also terminated Father's parental rights on the same grounds. That ruling is not at issue in this appeal.

ground."). "Abandonment" is determined by reference to the parent's conduct, not the parent's subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18.

**¶14** An order terminating parental rights will be affirmed absent an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). "Because the trial court is in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings, this court will not reweigh the evidence but will look only to determine if there is evidence to sustain the [juvenile] court's ruling." *Id.* (cleaned up).

**¶15** Mother asserts that "the termination order constituted an abuse of discretion," challenging the juvenile court's finding of statutory grounds for termination under A.R.S. § 8-533(B)(1) and (3).

**¶16** The undisputed evidence in the record is more than sufficient to support the termination of Mother's parental rights on grounds of abandonment under A.R.S. § 8-533(B)(1). The record shows that Mother absented herself from the children's lives and from the dependency proceedings for over a year, from the initial hearing in May 2021 until the status conference in August 2022. Mother has offered no justification for this lengthy absence from her children's lives, which alone constitutes *prima facie* evidence that she abandoned them. *See* A.R.S. § 8-531(1) ("Failure to maintain a normal parental relationship with the child without just cause for a period of six months or more constitutes prima facie evidence of abandonment.").

**¶17** Moreover, Mother introduced no evidence to rebut the *prima facie* showing of abandonment at the termination trial in November 2022. She presented no evidence, for example, that she attempted to send letters or gifts to the children, or that she provided financial support for them. *See Maricopa Cnty. Juv. Action No. JS-3594*, 133 Ariz. 582, 586 (App. 1982) (holding that presumption of abandonment was rebutted by evidence that father made "numerous attempts to keep in touch with his children" and "regularly sent them gifts and letters"). Mother's decision to reappear in the case in August 2022 and then request visitation does nothing to rebut the *prima facie* showing of abandonment created by her prior lengthy absence from the children's lives. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990) ("[A] prima facie case of abandonment cannot automatically be considered rebutted merely by post-petition attempts to re-establish a parental relationship. Such an automatic rule would virtually eliminate any possibility of success for a petition in a contested termination action."); *see also Maricopa Cnty. Juv. Action No. JS-1363*, 115 Ariz. 600, 601 (App. 1977)

(explaining that parent's failure "to provide for or contact the child for a period in excess of six months" gives rise to presumption of abandonment, and "once that presumption has attached, it may [not] be rebutted merely by a showing of attempts to reestablish a parental relationship after the petition was filed"). The unrebutted presumption of abandonment requires us to affirm the juvenile court's finding of the requisite statutory ground for termination under A.R.S. § 8-533(B)(1). *See Dep't of Child Safety v. DeShannon B.*, 1 CA-JV 19-0262, 2020 WL 2086493, at *3, ¶ 13 (Ariz. App. Apr. 30, 2020) (mem. decision) ("[W]hen a *prima facie* case of abandonment is presented, it . . . creates a presumption in favor of the moving party; the burden then shifts to the parent to rebut the presumption of abandonment.").

**¶18** Asserting that "DCS is constitutionally obligated to make a diligent effort to help the parent reunify with the child" before seeking termination, Mother contends that the termination order is invalid because DCS purportedly violated her "constitutional right to family-reunification services." She acknowledges that DCS "offered an array of services" at the outset of the proceedings and does not dispute that she failed to engage in services or otherwise meaningfully participate in these proceedings at any point prior to August 2022. She complains, however, that, "in and after August of 2022," DCS offered her nothing more than "substance-abuse services." Mother contends that once she began participating in this case in August 2022, DCS should have provided her with visitation, parenting skills services, and housing assistance. Because DCS did not do so, she argues, DCS violated its "constitutional[] obligat[ion]" to provide her with appropriate services "to enhance her parenting abilities."

**¶19** Mother never raised her constitutional claim during the dependency proceedings below, nor did she request any services other than visitation after she began participating in the proceedings in August 2022.[4] She has therefore waived her contention that DCS purportedly violated her constitutional rights by failing to provide various reunification services. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008) (holding that arguments "not raised in the juvenile court" were waived on appeal); *see also Roland T.*, 1 CA-JV 22-0084, at *2, ¶ 16 (Ariz. App. Feb. 7, 2023) (holding that father "waived" his claim that "the superior court

---

[4] When Mother stated at the August 2022 hearing that she was homeless, the court, on its own motion, ordered the appointment of "a community resource coordinator to see if we can help you with the homelessness." At the next hearing the following month, Mother did not complain that she had received inadequate housing assistance from DCS or otherwise raise the issue with the court.

violated his due process rights by not ordering reunification services" by "fail[ing] to raise" it in superior court). Although Mother contends that she "preserved the issue" by "request[ing] reinstatement of family-reunification services in and after August of 2022," her request for visitation at the August 2022 hearing made no reference to any services other than visitation and alleged no violation of any constitutional right. Her request for visitation at the August 2022 hearing was therefore insufficient to preserve the constitutional claim she now raises on appeal. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011) ("[L]egal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits. If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal.") (citation omitted).

**¶20** In any event, the record does not support Mother's allegations about DCS's purported failure "to make a diligent family-reunification effort." On the contrary, DCS offered a variety of family preservation services to Mother and Father at the outset of DCS's involvement in October 2020, including assistance with parenting skills, housing, and employment. As the juvenile court found, Mother and Father "were offered appropriate services but did not engage." Although Mother focuses only on the purported inadequacy of the services offered after her reappearance in the case in August 2022, we must consider the services Mother was offered over the entirety of the dependency proceedings. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, 26, ¶¶ 49, 69 ("[The juvenile] court was required to examine not only the final months but the entire dependency," and "the court must also consider the totality of the circumstances when determining whether DCS has made diligent efforts."). Viewed as a whole, the evidence is more than sufficient to support the juvenile court's determination that DCS "appropriately referred Mother and Father to services designed to remediate the barriers to reunification" at the outset of the case, and the parents "did not engage."

**¶21** Because we affirm the juvenile court's determination that DCS met its burden of establishing grounds for termination under A.R.S. § 8-533(B)(1), we need not address Mother's challenge to the court's additional determination that DCS met its burden to establish grounds for termination under A.R.S. § 8-533(B)(3) as well. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, [the reviewing court] need not address claims pertaining to other grounds.").

¶22 To terminate a parent's rights, the court must not only find at least one statutory ground for termination but must also determine that termination is in a child's best interests. A.R.S. § 8-533(B); *Michael J.*, 196 Ariz. at 249, ¶ 12. Here, the court found that termination was in the best interests of L.K. and A.K. because they were in an adoptive kinship placement where their needs were being met. "Denying severance," the court found, would "leave [them] to languish in foster care" while "waiting for their parents to conquer [their] substance abuse issues," thereby "deny[ing] them the permanency to which they are entitled." The court further noted that both children expressed their desire to be adopted. Mother does not challenge the court's "best interests" determination on appeal. We therefore accept it and need not address it further.

## CONCLUSION

¶23 For the foregoing reasons, we affirm.

